WILLIAM A. DAVENPORT *vs.* COUNTY OF FRANKLIN.

SAME *vs.* COMMONWEALTH.

Franklin.    September 16, 1931. — October 2, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Damages,* For property taken or damaged under statutory authority. *Evidence,* Competency. *Practice, Civil,* Exceptions.

Upon a petition under G. L. c. 79, § 14, for the assessment of damages for property taken by eminent domain, the damages should be assessed on the basis of the detriment to the petitioner and not of the advantage to the respondent, and should not be measured by the adaptability of the property for the use for which it was taken unless that adaptability added to its market value generally.

To justify departing from the general rule, applicable upon such a petition, that the owner is entitled to the fair market value of the property taken ascertained in view of all the uses to which the property reasonably was adapted at the time of the taking, the petitioner has the burden of proving that it is impossible to prove the value of his property without dispensing with that rule; and such burden is not maintained merely by evidence that the property had no market value unless it also appears from the testimony that the property was of such a nature or so situated or improved that its real value for actual use cannot be ascertained by reference to market value.

At the trial of a petition for the assessment of damages for property taken by eminent domain for a highway, there was evidence that the

petitioner, previous to the taking, had purchased the land from a street railway company, which had maintained ties and rails thereon; and that, in the construction of the railway many years before the taking, a cut had been made in a hill in one portion of the land, fills were made in other portions, and an iron drain pipe was laid at a certain point. *Held*, that evidence as to the nature of the land, including evidence as to the amount and kind of materials removed from the cut and of materials placed in the fill and as to the iron pipe, was admissible in the discretion of the trial judge as a part of the description of the land at the time of the taking.

There was further evidence at the trial above described that the highway built by the respondent was an enlargement of the roadbed of the railway with the fill left substantially as it was at the time of the taking. There was no evidence that the cut and fills made the land more valuable to the petitioner or to any prospective purchaser other than the respondent, and none that the property had a special utility or availability not only to the respondent but also to other persons who could use it for the particular purpose intended by the respondent. Subject to the respondent's exceptions, the trial judge permitted a witness to state his opinion as to the value of the land, having taken into consideration in determining that value the fills and the price per cubic yard thereof at the time of the taking; and further permitted the witness to state the price per cubic yard at which he had estimated the value of the fills at that time. The judge stated to the jury, ". . . these costs that are going in are admitted not as showing independent and distinct items to be added to . . . [the petitioner's] loss, but as elements which might be considered in determining the real value of the land." *Held*, that

(1) The evidence as to the price per cubic yard of the fills had no relevancy to show the value of the land taken, nor could it have been of aid to the jury in deciding what would be fair compensation to the petitioner; its only apparent probative value was to show that because the fills had been made the respondent might be saved the cost of making them in using the land for the purpose for which it had been taken;

(2) The admission of such evidence was erroneous and was likely to influence the jury to assess damages on an erroneous theory;

(3) Such error was not cured by the statement of the judge;

(4) Such error was prejudicial to the respondent and its exception was sustained.

TWO PETITIONS for the assessment of damages for property taken by eminent domain, filed in the Superior Court on November 15, 1928, and May 14, 1929, respectively.

The petitions were tried together before *Hanify*, J. Material evidence is stated in the opinion. There were verdicts for the petitioner in the sums, respectively, of $3,320 and $5,168. The respondents alleged exceptions.

*P. H. Ball*, for the respondents.

*H. J. Field*, for the petitioner.

SANDERSON, J.  In both of these cases the petitioner is seeking to recover damages for land taken for a State highway.  In the first, the taking was made in 1927, by the county commissioners acting for the county of Franklin, and in the second, the Commonwealth, acting by its department of public works, made the taking in 1928.  In both cases the titles acquired by the takings were in fee simple.

The land in question was formerly owned by a street railway company and used in its business and was purchased by the petitioner from that company by a receiver's deed.  The land taken by the county was fifty feet in width and three thousand eight hundred feet in length. A portion of it was originally swampy and another part consisted of a hill through which a cut had been made when the railway was constructed in 1902.  The material removed from the cut was spread over the swamp to make the street railway roadbed.  Other material was brought from other places and made a part of the roadbed.  The depth of the fill over the swamp was about four feet and on this fill and through the cut the ties and rails of the street railway company were laid and the ties were on the roadbed throughout its length at the time of the taking.  The evidence as to the amount and kind of material removed from the cut and placed in the swamp was admissible in the discretion of the judge as a part of the description of the land at the time of the taking, and the exception to the admission of this evidence must be overruled. The petitioner, having testified to facts tending to prove his qualifications as an expert on land, earth, excavation and fill values and having testified that the land taken by the county had no market value, was permitted, subject to the exception of the county, to give his opinion that the real value of the land was $5,000; that the elements which he took into consideration in determining this value were the fill and price per yard of the fill at the time of the taking. The witness was then permitted to testify, subject to the

respondent's exception, to the price per cubic yard at which he had estimated the value of the fill that was there at the time of the taking.

The land taken by the Commonwealth consisted of several parcels adjacent to a State highway location at the time of the taking, and the record states that most of this land had a market value, concerning which evidence was introduced. At a point in one of the parcels taken by the Commonwealth the street railway tracks had been located on a hill, and for a distance of several hundred feet a fill of approximately sixteen feet at its greatest depth had been constructed; under this fill the street railway company had laid an iron pipe for the purpose of conducting water from one side of its location to the other. The testimony as to the nature of this property including that relating to the iron pipe and its use was admissible, in the discretion of the judge, as a part of the description of what was taken, and the exception thereto must be overruled. For a similar reason, the admission of testimony as to the number of cubic yards of gravel and other material used to make the fill and there at the time of the taking cannot be said to be reversible error. The petitioner testified that the portion of this land where the fill was made had a value but no market value. He was then permitted to give his opinion as to its value and to state, subject to the exception of the Commonwealth, that his valuation was approximately on the same computation of values of fill as in the case against the county. Evidence of the replacement value of the fill at the time of taking was also introduced by other witnesses subject to the respondent's exception. In cross-examination of a witness called by the respondent, the petitioner brought out the fact that the highway built was simply an enlargement of the roadbed of the street railway company with the fill left substantially as it was at the time of the taking. When the testimony to which exceptions were saved was being introduced the trial judge said to the jury: "There is some evidence going in here at the present time relative to the cubic yard cost of this fill, and I am going to instruct you, that relative to that evidence, in estimating the loss to the petitioner, these

costs that are going in are admitted not as showing independent and distinct items to be added to his loss, but as elements which might be considered in determining the real value of the land.''

In *Smith* v. *Commonwealth*, 210 Mass. 259, 261, the court said: "One whose land is taken by eminent domain is entitled to be compensated in money for the fair value in the market of that of which he has been deprived. In ascertaining what that value is, all the uses to which the property is reasonably adapted may be considered . . . . It is only in those rare instances, when property is of such a nature or so situated or improved that its real value for actual use cannot be ascertained by reference to market value, that the standard or special value may be resorted to." See *Moulton* v: *Newburyport Water Co.* 137 Mass. 163, 167; *Conness* v. *Commonwealth*, 184 Mass. 541. In cases of this kind it is the detriment to the owner that is to be considered and not the advantage to the party exercising the right of eminent domain. *Providence & Worcester Railroad* v. *Worcester*, 155 Mass. 35, 38, 39. *Barnes* v. *Springfield*, 268 Mass. 497, 510. Recovery should not be measured by the adaptability of the property for the use for which it was taken unless that adaptability added to its market value generally. *United States* v. *Chandler-Dunbar Water Power Co.* 229 U. S. 53, 81. To justify departing from the general rule as to the measure of damages the petitioner has the burden of proving that it is impossible to prove the value of his property without dispensing with that rule. *Sargent* v. *Merrimac*, 196 Mass. 171, 175. This burden is not maintained merely by evidence that the property has no market value unless it also appears from the testimony that the property is of such a nature or so situated or improved that its real value for actual use cannot be ascertained by reference to market value. Evidence as to the price per cubic yard of the fill at the time of the taking had no proper tendency to prove the value of the land taken nor could it have been of aid to the jury in deciding what would be fair compensation to the petitioner. It had no tendency to prove real value to the

petitioner, but its probative value so far as it had any would seem to be to show that because these fills had been made the respondents might be saved the cost of making them in using the land for the purpose for which it had been taken. With such evidence in the cases the jury would be likely to assess damages on an erroneous theory, and we cannot say that the prejudicial effect of the evidence was cured by the statement of the judge to the jury when the evidence was being introduced. In *Providence & Worcester Railroad* v. *Worcester,* 155 Mass. 35, evidence of the value of gravel in a pit was held to be competent in the discretion of the judge in a case where there was testimony tending to prove that the land taken could be used as a gravel pit. There has been no contention that the land in question was available for a gravel pit. The cases are distinguishable from *Beale* v. *Boston,* 166 Mass. 53, *Beals* v. *Brookline,* 245 Mass. 20, and *James Millar Co.* v. *Commonwealth,* 251 Mass. 457, in which improvements had been made by the owner for the benefit of his remaining land and evidence of the fair value of the improvements or of their reproduction or replacement cost was held to be admissible for its bearing on the difference between market or real value of what the owner had before the taking and what he had after. That reason for admitting the evidence does not appear to exist in the cases at bar. There was no evidence that the cut and fills made the property more valuable to the petitioner or to any prospective purchaser other than the respondents, and none that the property had a special utility or availability not only to the taker but to other persons who could use it for the particular purpose intended by the taker. See *United States* v. *Boston, Cape Cod & New York Canal Co.* 271 Fed. Rep. 877. The admission of the testimony as to the price per cubic yard of the fills and of the replacement values of the material in the fills at the time of the takings was prejudicial error.

In each case the entry must be

*Exceptions sustained.*