MANUEL P. CORREIA *vs.* NEW BEDFORD REDEVELOPMENT
AUTHORITY.

Bristol.    February 14, 1977. — May 10, 1977.

Present: HALE, C.J., GOODMAN, & ARMSTRONG, JJ.

*Damages,* Eminent domain.    *Value.    Eminent Domain,* Damages.
*Evidence,* Value, Opinion: expert.

In a proceeding for an assessment of damages for a taking by eminent
   domain, testimony by a general contractor of the depreciated repro-
   duction cost of a building on one of the parcels was inadmissible
   where there was insufficient evidence for the judge to make a pre-
   liminary finding that the property taken was a special purpose
   property, the value of which could not be established by conven-
   tional methods. [290-294]
In a proceeding for an assessment of damages for a taking by eminent
   domain, the defendant was not entitled to have the testimony of
   the plaintiff's real estate expert excluded by means of a motion to
   strike at the close of the plaintiff's evidence where the defendant
   made no objection when the evidence was offered. [294-295]
In a proceeding for an assessment of damages for a taking by eminent
   domain, there was sufficient evidence to support a determination
   that the owner of the property was familiar with real estate values
   and with the characteristics of the property and its availability for
   actual and potential use and thus could properly testify as to its
   value. [295]
In a proceeding for an assessment of damages for a taking by eminent
   domain, there was sufficient evidence to support a finding that a
   building contractor was qualified to give his opinion as to the re-
   production cost and depreciation of a building on one of the par-
   cels. [295-296]

PETITION for assessment of damages filed in the Supe-
rior Court on May 31, 1973.

The case was tried before *Linscott,* J.

*Raymond L. Letourneau* for the defendant.

*Charles R. Desmarais* for the plaintiff.

HALE, C.J.    This is a petition for an assessment of dam-
ages (G. L. c. 79, § 12) arising out of the defendant's tak-

ing, in 1971, of two parcels of land owned by the plaintiff and located in New Bedford. A jury returned a verdict of $429,000 ($404,000 for the larger parcel and $25,000 for the smaller parcel), and the case is here on the defendant's appeal from a judgment entered pursuant to that verdict.

The property in question consisted of two parcels of land upon which were three buildings. The principal building was located on the larger of the two parcels. There were two small buildings on the smaller lot. The principal building was comprised of a main floor and a basement, each having the same area. That building was constructed on a slope and had a separate entrance to the basement from the rear of the building. The basement area was used for a tire retreading shop. The main floor was utilized to sell tires, refrigeration units, television sets, other appliances, and automotive supplies. The building had been built in 1922, and an addition was constructed in 1963. That addition was used as a service area for the installation of tires on trucks and automobiles.

The defendant's appeal raises several issues relating to the admissibility of evidence. As our consideration of the question of the admissibility of evidence of the reproduction cost of the buildings is dispositive of the case, it will be discussed first.

1. The plaintiff presented the testimony of one Victor Fleurent, a general contractor who had built a portion of the plaintiff's buildings. Over the defendant's objection Fleurent was asked for his opinion as to the depreciated reproduction cost of the building on one of the parcels. The defendant objected to the admission of that testimony on the ground that the depreciated reproduction cost method was not a proper measure of damages unless it had first been demonstrated that the property taken was a "special use" property, and no such showing had been made here. The general rule applied in determining the amount of compensation due when property is taken under the power of eminent domain is that the measure of damages is the fair market value of the property at the time of the taking. *Kinney* v. *Commonwealth*, 332 Mass. 568, 571-572 (1955).

Fair market value is defined as "the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market." *Epstein* v. *Boston Housing Authy.* 317 Mass. 297, 299-300 (1944). In some instances, "when property is of such a nature or so situated or improved that its real value for actual use cannot be ascertained by reference to market value," *Smith* v. *Commonwealth,* 210 Mass. 259, 261 (1911), the standard of special value, as determined by computing the cost of reproduction minus an appropriate amount for depreciation, may be resorted to. This method is most often applied to property that is specially adapted for a particular use which does not have a very active market,[1] so that its value cannot be shown by reference to sales of nearby comparable property. See *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 194 (1956). In such cases "it is proper to allow testimony to be given of [the] value [of the property] for the special purpose for which it is used . . .." *Cochrane* v. *Commonwealth,* 175 Mass. 299, 302 (1900). *Tigar* v. *Mystic River Bridge Authy.* 329 Mass. 514, 518 (1952). But evidence of the cost of reproduction is a very inconclusive test of the value of property, *Goodyear Park Co.* v. *Holyoke,* 298 Mass. 510, 511 (1937), and thus it is admissible only (a) where reproduction of essentially the same type of structure would be reasonable in the event of its destruction or taking, *Commonwealth* v. *Massachusetts Turnpike Authy.* 352 Mass. 143, 148 (1967), and (b) it is impossible to prove the value of the property without dispensing with conventional fair market or income capitaliza-

---

[1] Use of the depreciated reproduction cost method is most common with reference to property held for charitable or nonprofit uses, such as churches, schools and clubs and public utilities, "where property with a high value for the use to which it is being put would have a much lower market value because of the paucity or absence of buyers for that use." *United States* v. *Certain Property Located in the Borough of Manhattan,* 306 F. 2d 439, 447 (2d Cir. 1962). See *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Authy.* 335 Mass. 189, 196 (1956), and *Commonwealth* v. *Massachusetts Turnpike Authy.* 352 Mass. 143, 147 (1967).

tion rules. *Tigar* v. *Mystic River Bridge Authy., supra,* at 518. We assume for the purposes of this case that requirement (a) has been satisfied.

The burden of proving that the property taken is special purpose property, the value of which cannot be practicably established by conventional means, is on the plaintiff. *Davenport* v. *County of Franklin,* 277 Mass. 89, 93 (1931). *Silk* v. *Commonwealth,* 1 Mass. App. Ct. 149, 152-153 (1973). The trial judge must make a preliminary finding that the plaintiff has established to the satisfaction of the court that a determination of fair market value using the usual rule would be impossible. He may then admit evidence of reproduction costs as a measure of value. *Silk* v. *Commonwealth,* 1 Mass. App. Ct. at 153. See *Tigar* v. *Mystic River Bridge Authy., supra,* at 518-519, and cases cited therein.

In the instant case, at the time the evidence of reproduction cost was admitted, there had been no evidence of any comparable sales in the area nor any evidence that there had been no sales of comparable property. Neither had there been evidence to indicate that it was either possible or impossible to arrive at the fair market value through the capitalization of income approach.

The plaintiff in substance argues that the following aspects of his witnesses' testimony would support a preliminary finding that the property in question was especially adapted to a particular use, or was of a type not commonly bought and sold: (1) the floor of the building was constructed of steel-reinforced concrete to accommodate the weight of automobiles and tractor trailer trucks serviced by the facility; (2) the electrical wiring in the building was installed to handle a number of power tools specific to the tire retreading and refitting business; (3) the building contained a steam-generating boiler for use in the tire retreading service; (4) the doors were oversized to allow large trucks to be driven inside; (5) there were alignment pits and hydraulic lifts, eight for passenger cars and two for trucks. While all of those factors in combination might have supported a finding that the property

was particularly adapted to a special use, such features were also susceptible of valuation by the market data approach and in fact were considered by the plaintiff's real estate expert in making his appraisal of the fair market value. The presence of special features or special equipment in a building does not necessarily indicate that the property is of a type that can be classified as special purpose, to allow admission of the cost of reproduction. See *United States* v. *Certain Property Located in the Borough of Manhattan,* 306 F. 2d 439, 447-448 (2d Cir. 1962). In the present case the judge made no preliminary finding that it would be impossible to establish value by use of market data so that the usual rule could be dispensed with in favor of the reproduction cost method.

The plaintiff's real estate expert, called as a witness following Fleurent, testified, among other things, that he had attempted to arrive at a fair market value by the market data approach but found the only comparable sales were such as to assist him in arriving at the value of the underlying land. He did, however, testify that he had made a determination of the fair market value by capitalizing the income which he imputed to the property, no part of which was rented. He arrived at this by two methods; one, by an undescribed process of converting gross sales into rental value, from which he then subtracted the expenses of operating the property to arrive at the net income, which he then capitalized. He also cross checked the result reached by that method by determining a fair rental value on the basis of the rent paid for other retail space in New Bedford.[2]

While the raw rental income derived from property simi-

---

[2] The witness also testified that in the course of arriving at his opinion as to fair market value "I studied the reproduction cost of the building and I applied depreciation." He apparently rejected the resultant depreciated value from consideration as on cross examination he testified "but I did not adopt that figure as the final value. It was substantially higher." We conclude that the witness arrived at his own determination of the depreciated value rather than using Fleurent's. We do not know which was the higher.

lar to that taken is generally inadmissible to show the value of the property taken (*Wenton* v. *Commonwealth*, 335 Mass. 78, 83 [1956]), the capitalization of rental income determined from the rental income of comparable property is a valid method for estimating the fair market value of the property taken. This is especially so when the property taken is itself not rented, and there are no sales of comparable property on which to base an estimate of fair market value. A rule allowing the use of fair rental value of comparable property as a basis of determining fair rental value of the property taken is very little different from a computation of fair market value based on comparable sales, since a rental can be viewed as a short term sale. The capitalization of the net income of the property taken, arrived at by deducting the reasonable expenses of operating that property from the gross rental income determined in the manner set forth above, is thus an acceptable method of determining the fair market value of that property.

The use of this sensible and understandable method would assist the jury in reaching a just result. Compare *Boston Gas Co.* v. *Assessors of Boston,* 334 Mass. 549, 574-584 (1956); *Commonwealth* v. *Massachusetts Turnpike Authy.* 352 Mass. at 152 (Kirk, J., concurring). It would appear that it was not a practical impossibility for the fair market value of the property taken to be determined by means other than the reconstruction cost depreciated method.[3] Thus, there was no basis for the judge to make a preliminary finding of such impossibility. We conclude that it was error to admit the evidence of reproduction cost less depreciation.

2. At the close of the plaintiff's evidence the defendant

---

[3] The method employed by the real estate expert of converting gross sales into rental value is questionable as "income derived from a business conducted upon the premises depends on various factors not attributable to the land and furnishes no criterion for the determination of the market value of the land." *Amory* v. *Commonwealth,* 321 Mass. 240, 258 (1947).

moved to strike the testimony of the plaintiff's real estate expert on the ground that it was based on legally incompetent factors. But since no objection was made when the evidence was offered, the defendant was not entitled as of right to have the evidence excluded by means of a motion to strike at the close of the plaintiff's evidence. *Solomon v. Dabrowski,* 295 Mass. 358, 359-360 (1936). *Leonardi* v. *Peabody,* 351 Mass. 706 (1966).

3. The defendant also objected to the testimony of the plaintiff-owner as to the fair market value of the property at the time of the taking, on the ground that he was not properly qualified to give testimony as to the value of the property. Whether the witness was sufficiently qualified by familiarity, knowledge, and experience to be permitted to testify, was a preliminary question of fact to be decided by the trial judge. *Rubin* v. *Arlington,* 327 Mass. 382, 384 (1951). There was sufficient evidence for the judge to make the determination that Correia, as owner, was familiar with real estate values and with the characteristics of the property and its availability for actual and potential use and thus could properly testify as to its value. *Menici* v. *Orton Crane & Shovel Co.* 285 Mass. 499, 503-504 (1934).

4. The defendant also challenged the qualifications of Fleurent, the building contractor who testified to reproduction cost and depreciation on the building. Although we have decided that the evidence of reproduction cost less depreciation was improperly admitted the question of the witness's qualification as an expert was for the judge to determine, and his conclusion can be disturbed only where the evidence is insufficient to warrant that conclusion. *Commonwealth* v. *Siano,* 4 Mass. App. Ct. 245, 248 (1976). There was sufficient evidence from which the judge could have found the witness qualified to give his opinion as to both reproduction cost and depreciation. Any lack of skill, knowledge or expertise demonstrated through testimony elicited on cross examination affected only the weight, not the admissibility of his testimony. *Commonwealth* v.

*Siano, supra. Commonwealth* v. *Navarro,* 2 Mass. App. Ct. 214, 223 (1974).

*Judgment reversed.*