## MANUEL P. CORREIA vs. NEW BEDFORD REDEVELOPMENT AUTHORITY.

Bristol. December 7, 1977. — June 8, 1978.

Present: QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Eminent Domain*, Damages, Reproduction cost. *Evidence*, Value, Reproduction cost. *Value.*

In an action for assessment of damages arising out of a taking by eminent domain of two parcels, on one of which was a building used in part as a tire retreading shop, the judge did not err in allowing the plaintiff's expert to testify as to the depreciated reproduction cost of the property where the property was of the type not frequently bought or sold and was used for a special or unusual purpose, where there were no sales of comparable property which could be relied on to support a market study analysis, and where the property taken was not itself rented, giving rise to the need for more conjectural methods of calculating market value based on variations of the income capitalization approach. [367-368]

PETITION for assessment of damages filed in the Superior Court on May 31, 1973.

The case was tried before *Linscott, J.*

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Charles R. Desmarais* (*Philip Beauregard* with him) for the plaintiff.

*Raymond A. Letourneau* for the defendant.

LIACOS, J. The plaintiff brought this petition for assessment of damages (G. L. c. 79, § 12) arising out of the taking by the defendant of two parcels of land owned by the plaintiff in New Bedford. The jury returned a verict of $429,000, and the defendant appealed. The Appeals Court[1] reversed

---

[1] *Correia* v. *New Bedford Redevelopment Auth.*, 5 Mass. App. Ct. 289 (1977).

the judgment entered pursuant to that verdict. The plaintiff was granted further appellate review by this court. 372 Mass. 873 (1977). We affirm the judgment of the Superior Court.

At the time of the taking in 1971, the property in question consisted of "parcel one," on which was situated the principal building, and "parcel two," on which were situated two smaller buildings. The principal building had been constructed in 1922, and an addition had been built in 1963. The basement of the 1922 structure was used as a tire retreading shop, the main floor was used to sell tires, automotive supplies, and household appliances. The 1963 addition housed a service area for installing tires. The smaller buildings on parcel two were used for a television service department.

The plaintiff called three witnesses who testified regarding the value of the property. On appeal, the defendant raises several issues relating to the admissibility of certain testimony of all three witnesses. The only issue that need concern us at this stage of review is that which the Appeals Court found dispositive of the case — the admissibility of evidence concerning the cost of reproducing the buildings in question. *Correia* v. *New Bedford Redevelopment Auth.*, 5 Mass. App. Ct. 289, 290-294 (1977).

1. *Evidence relating to the reproduction cost method of valuation.* We begin our analysis with a statement of the general rule that is to be applied in determining the amount of compensation due in eminent domain cases. The measure of damages is the fair market value of the property at the time of the taking. *Kinney* v. *Commonwealth*, 332 Mass. 568, 571-572 (1955). See G. L. c. 79, § 12. Fair market value is defined as "the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market." *Epstein* v. *Boston Hous. Auth.*, 317 Mass. 297, 299 (1944), quoting from *Commissioner of Corps. & Taxation* v. *Worcester County Trust*, 305 Mass. 460, 462 (1940). "All the uses to which the property is reasonably adapted may be considered." *Newton Girl Scout*

*Council, Inc.* v. *Massachusetts Turnpike Auth.*, 335 Mass. 189, 193 (1956).

At least three methods of calculating fair market value are employed by experts in the real estate field. See *State* v. *Wilson*, 6 Wash. App. 443, 447-448 (1972), citing American Institute of Real Estate Appraisers, The Appraisal of Real Estate 60 (5th ed. 1967). They are: "1. The current cost of reproducing a property less depreciation from deterioration and functional and economic obsolescence. 2. The value which the property's net earning power will support, based upon a capitalization of net income. 3. The value indicated by recent sales of comparable properties in the market." *State* v. *Wilson, supra.* These methods will be referred to herein as the depreciated reproduction cost (DRC) method, income capitalization method, and the market study method, respectively.[2] As the court in *Wilson* observed: "Each of these approaches is but a method of analyzing data to arrive at the fair market value of the real property as a whole." 6 Wash. App. at 448.

Whatever the relative importance or usefulness of the three methods to the real estate profession, however, they have not been viewed as equally applicable or as interchangeable under the law of eminent domain as it has developed in our cases. More specifically, the introduction of evidence concerning value based on DRC computations has been limited to special situations in which data cannot be reliably computed under the other two methods. For example, in *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Auth., supra* at 194-195, we recognized that special considerations applied to a determination of the value lost to the Girl Scouts resulting from the taking of part of

---

[2] Evidence of value based on all three methods was introduced at trial in the instant case. A general contractor called by the plaintiff applied the DRC method to calculate a value of $609,960 for the buildings alone. The plaintiff's real estate expert testified that the value of the buildings and land — based on consideration of all three methods with regard to the buildings and a market study approach as to the land — was $375,000 at the time of taking. The plaintiff took the stand and offered his opinion that the value of the buildings and land was $750,000.

their camp land for a highway and the attendant loss of privacy and seclusion. We reasoned: "It is not to be expected that the properties adapted for such a specialized use will have a very active market or that their market value can be shown by sales of nearby comparable property. . . . To assist the trier of the fact of value to reach a just result when such a property is taken by eminent domain, it frequently will be necessary to allow much greater flexibility in the presentation of evidence than would be necessary in the case of properties having more conventional uses." We concluded, more specifically, that "[t]he properties may be of a type, not frequently bought or sold, but usually acquired by their owners and developed from the ground up, so that the cost of land plus the reproduction cost (less depreciation where appropriate) of improvements may be more relevant than in the ordinary case."

We made the generalization in *Newton Girl Scout Council, Inc.*, that unusual problems of proof of damages "most frequently arise in cases of service-type properties like churches, convents, hospitals, country clubs, school and college premises and buildings of religious and charitable societies and similar organizations." *Id.* at 196. However, we did not purport, as the defendant here seems to argue, to state an inflexible rule strictly limiting the range of permissible applications of the DRC or any other method. Indeed, the cases cited in *Newton Girl Scout Council, Inc.*, show that departures from the "norm" of comparable sale approaches as evidence of value for so called special purpose properties have been allowed for certain commercial and industrial properties. We have recognized that courts, in permitting the use of valuation data other than those factors ordinarily bearing on market price, "may be doing no more than recognizing that more complex and resourceful methods of ascertaining value must be used where the property is unusual or specialized in character and where ordinary methods will produce a miscarriage of justice." *Id.* at 195. To the same effect is our opinion in *Commonwealth* v. *Massachusetts Turnpike Auth.*, 352 Mass. 143, 147-148 (1967). In that case

we addressed the problem in the context of special purpose government properties, and stated that evidence based on the DRC method may be helpful in ascertaining value "where the evidence warrants the conclusion that the real value of a property taken by eminent domain cannot be shown by a sequence of sales of similarly used properties [market study method], by a capitalization of earnings [income capitalization method], or by other usual criteria." It thus appears that while introduction of evidence of value based on the DRC method is generally disfavored, such evidence may be introduced in certain circumstances where reliable data based on the other methods is not available.

An oft-repeated reason for the disfavored status of the DRC method is expressed in *Commonwealth* v. *Massachusetts Turnpike Auth., supra* at 148: "There is danger, of course, that evidence of reproduction cost (even if it purports to be fairly adjusted) may lead to 'an excessive award unless it is [in fact] *adequately* discounted for obsolescence and inadequacy as well as for physical depreciation' (emphasis supplied). See Orgel, Valuation under Eminent Domain (2d ed. [1953]) § 199, and also §§ 188-198." No per se rule requiring the exclusion of DRC data was laid down, however. To the contrary, we noted that, where the structures taken remained reasonably well adapted to the special purposes for which they were employed and had not been shown to have been in such condition as to make reproduction unlikely or imprudent, DRC data reflected real value. We reasoned that, under such conditions, "adjusted reproduction cost figures could have been admitted in evidence because (a) the current cost of reproducing the buildings could be adjusted (fairly and without undue complication or conjecture) to reflect accrued physical depreciation and any functional or other obsolescence, and (b) the adjusted figure would reasonably tend to prove what the owner would have to pay to obtain approximately the same still desirable and useful structures, after taking into account age, wear and tear, and observed obsolescence." *Id.* at 148-149.

Based on analysis of the decisional precedents just discussed, as well as other precedents, the Appeals Court in the instant case arrived at the following formulation of the admissibility of DRC data: "[I]t is admissible only (a) where reproduction of essentially the same type of structure would be reasonable in the event of its destruction or taking . . . , and (b) it is *impossible* to prove the value of the property without dispensing with conventional fair market or income capitalization rules" (citation omitted) (emphasis added). 5 Mass. App. Ct. at 291-292. See *Silk* v. *Commonwealth*, 1 Mass. App. Ct. 149 (1973).

The Appeals Court assumed arguendo that requirement (a) was satisfied, but concluded that (b) was not strictly satisfied because "it was not a practical impossibility" for the market value to have been determined by the "conventional" methods. *Id.* at 294. This conclusion seems based on the testimony of the plaintiff's real estate expert. We do not view his testimony in the same way. The expert testified that he had been unable to find comparable sales sufficient to support a market study approach to the valuation of the buildings. He did, however, testify as to the fair market value based on income capitalization of two different sets of figures.[3] The first set reflected the conversion of gross sales into rental value, a calculation characterized as "questionable" by the Appeals Court in that it did not isolate various factors not attributable to the real property. *Id.* at 294 n.3. *Amory* v. *Commonwealth*, 321 Mass. 240, 258 (1947). The second set of figures, used as a cross check on the accuracy of the first income capitalization computation, was arrived at by deducting the reasonable expenses of operating the property taken from the gross rental income determined by reference to rental income of comparable property. This second method of capitalizing rental income was found to be "sensible and understandable" by the Appeals Court, and

---

[3] This witness testified that he used three methods of valuation, including DRC, in arriving at an appraisal of the value of the building on parcel one. The defendant admitted the qualifications of this expert and made no objection to this use of DRC data.

particularly appropriate in cases, such as the instant case, in which the property taken has itself not been rented and there are no sales of comparable property on which to base an estimate of fair market value. *Id.* at 293-294.

Without passing judgment on the reliability and appropriateness in this case of the second method of capitalizing income approved by the Appeals Court, we think it apparent that this record clearly shows the difficulty of reaching a reliable figure of market value of this property by the exclusive use of any one method of valuation. This observation takes on special relevance in view of the Appeals Court's strict adherence in this case to the "impossibility" test. We therefore think it counter-productive, as well as unrealistic, to impose a strict barrier to the reasonable use of "unconventional" methods — such as the DRC method properly employed — in every case in which plausible, yet not wholly satisfactory, calculations may be made by use of one of the "conventional" methods.

The Appeals Court's statement of an "impossibility" test in this case finds support in what may be unnecessarily broad language in some of our older cases.[4] Although we believe the "impossibility" test to be somewhat rigid in view of the uncertainties inherent in the valuation of real estate,

---

[4] See *Tigar* v. *Mystic River Bridge Auth.*, 329 Mass. 514, 518 (1952) ("[T]he usual rule should be departed from and testimony of this kind admitted only when without it it is impossible to prove the value of the property in question"), quoting fron *Cochrane* v. *Commonwealth*, 175 Mass. 299, 303 (1900). But see *Newton Girl Scout Council, Inc.* v. *Massachusetts Turnpike Auth.*, 335 Mass. 189, 195 (1956) ("[I]t is proper to determine market value from the intrinsic value of the property and from its value for the special purposes for which it is adopted and used" in cases "where ordinary methods will produce a miscarriage of justice"); *Commonwealth* v. *Massachusetts Turnpike Auth.*, 352 Mass. 143, 147-148 (1967) (where "evidence warrants the conclusion" that the real value of special purpose government buildings cannot be shown by market study or income capitalization methods, DRC computations may be received). We note also that in *Silk* v. *Commonwealth*, 1 Mass. App. Ct. 149 (1973), the majority of the Appeals Court appear to treat this test as stating whether it is "possible" or "impossible" to establish the value of property taken by reference to "ordinary market data" is a matter of the sound discretion of the trial judge.

it does not follow that we must abandon long maintained distinctions between the various methods of calculating value. Such distinctions — specifically, the disfavored status of the DRC method — are grounded in the collective experiences of real estate practitioners, commentators, and courts, and based on practical concerns. We do not depart from such long established principles. The rule of disfavor, however, should be viewed as one of need, not "impossibility."

Although cognizant of the view that DRC data does not always reflect a meaningful measure of value, we have nonetheless recognized that the trial judge should be allowed to exercise sound discretion in determining when special conditions exist so as to justify the use of such data. *Lipinski* v. *Lynn Redevelopment Auth.*, 355 Mass. 550, 551-552 (1969). *Bachelder Truck Sales, Inc.* v. *Commonwealth*, 350 Mass. 270, 273 (1966).

In the instant case, although it is a close question, we find no abuse of discretion in the judge's decision to allow the admission of DRC data. On the evidence, we cannot say that he was unreasonable in concluding that the plaintiff's property was of the type "not frequently bought or sold which are used for a special or unusual purpose." *Lipinski, supra* at 551. The judge had heard expert testimony from an experienced general contractor that the principal building "was perhaps one of the most unique buildings built at that time." The unique aspects of the building — special weight-bearing construction, hydraulic lifts, service pits for cars and trucks, and so forth — were especially well suited to the tire retreading and installation business carried on by the plaintiff. A real estate expert testified that there were no comparable sales that could be relied on to support a market study analysis. The property taken was not itself rented, thus giving rise to the need for more conjectural methods of calculating market value based on variations of the income capitalization approach. Moreover, the judge took special care in his instructions to the jury on the issue of using DRC calculations: "As I listened to the attorney for the [defendant], he tells you, I gather, that you should take a dim view

of [the DRC] approach. It is true, and I'll instruct you that our Supreme Court has said that this method . . . is admissible, in the discretion of the Court. I exercised my discretion and allowed it in, but I will instruct you that it's often inconclusive." No objection was made to the charge, and no additional instructions were requested. In all these circumstances, we see no error in the admission of evidence of value based on the DRC method. It was properly received, to be given appropriate weight with the other evidence, as a guide to the jury in determining fair market value. See *Commonwealth* v. *Massachusetts Turnpike Auth.*, 352 Mass. at 148.

2. *Other issues*. The Appeals Court adequately treats, and we believe correctly disposes of, the remaining major arguments raised by the defendant in support of its request for a new trial. *Correia* v. *New Bedford Redevelopment Auth.*, 5 Mass. App. Ct. 289, 294-296 (1977). We have reviewed other arguments advanced by the defendant and not discussed by the Appeals Court, and find them to be without merit.

3. *Conclusion*. Having concluded that the trial judge did not abuse his discretion in determining that evidence of value based on the depreciated reproduction cost method could be admitted in evidence in the special circumstances of this case, and finding no other error, we order that the judgment of the Superior Court be affirmed. Each party is to bear its own costs on appeal.

*So ordered.*