MASSACHUSETTS-AMERICAN WATER COMPANY *vs.* GRAFTON WATER DISTRICT (No. 1). No. 91-P-1204. March 31, 1994. *Eminent Domain*, Reproduction cost, Damages. *Value. Evidence*, Value, Reproduction cost, Expert opinion. *Water Company. Damages*, Eminent domain. *Practice, Civil*, Instructions to jury.

After the trial of an eminent domain proceeding in the Superior Court, a jury returned a verdict for the plaintiff in the amount of $5,600,000. The defendant appeals from a judgment entered on that verdict[1] and from the denial of its motion for a new trial. We affirm.

The plaintiff and its predecessor, formed pursuant to St. 1886, c. 211, supplied water to the inhabitants of the towns of Grafton and Millbury from 1893, until February 26, 1988, when the defendant, by duly recorded orders, took certain real and personal property of the plaintiff then being used in its water service function. The defendant's eminent domain power derived from c. 135 of the Acts of 1984, which established it as a body corporate for the purpose, among others, of supplying water to the inhabitants of Grafton.

In its appeal, the defendant essentially argues that the judge erred by (1) admitting evidence of depreciated reproduction cost, (2) allowing evidence of valuation theories based upon the existence of an unregulated buyer, (3) excluding evidence of sales of other water companies and plaintiff's pre-taking offers of sale, (4) improperly instructing the jury and (5) refusing to consider its motions for a new trial.

1. *Depreciated Reproduction Costs (DRC).* A witness for the plaintiff testified to depreciated reproduction costs for the property taken, exclusive of land, of $7,077,700. Another plaintiff's witness testified that the fair market value of the land "enhanced by water" was $3,000,000. A third witness for the plaintiff testified essentially that the sum of those valuations should be reduced by $2,000,000 to account for "external obsoles-

---

[1]The judgment reflects the subtraction from the verdict of a pro tanto payment ($1,099,000) and the addition of interest ($1,200,256).

cence." Although the defendant admits that the property is special purpose property and that the DRC method of valuation appropriately may be utilized in certain circumstances involving special purpose property, it argues that such circumstances were not presented at trial and that expert opinion based upon DRC analysis, therefore, should not have been admitted in evidence. While we recognize that DRC is the "least favored approach" to valuation, see *General Elec. Co.* v. *Assessors of Lynn,* 393 Mass. 591, 606 (1984), and that this "disfavored status . . . [is] grounded in the collective experiences of real estate practitioners, commentators, and courts, and based on practical concerns," *Correia* v. *New Bedford Redev. Authy.,* 375 Mass. 360, 367 (1978), we hold that expert opinion utilizing the DRC method of valuation properly was admitted in this case.

No evidence of comparable sales was before the jury. One of the defendant's experts utilized the income capitalization method, but only in the context of a rate of return regulated by the Department of Public Utilities, and arrived at a valuation of $1,316,178. The defendant also introduced "rate based" valuations of slightly over $1,000,000. An expert for the plaintiff, also employing the income capitalization method, but in the substantially different context of a theoretical purchase by an unregulated buyer, testified to a valuation of "approximately $8,100,000."

The admissibility of DRC evidence does not depend, as earlier cases may have intimated, upon a determination that valuation by other methods is impossible. *Correia* v. *New Bedford Redev. Authy., supra* at 366 & n.4. In moving away from any rigid test of admissibility, the Supreme Judicial Court has stated that "[a]lthough cognizant of the view that DRC data does not always reflect a meaningful measure of value, we have nonetheless recognized that the trial judge should be allowed to exercise sound discretion in determining when special conditions exist so as to justify the use of such data." *Id.* at 367. In the circumstances of the disparate valuations and inconsistent premises of the parties' income capitalization approaches and the clearly special purpose nature of the property taken, the judge reasonably exercised his broad discretion by admitting DRC evidence. See *Benevolent & Protective Order of Elks* v. *Lawrence Redev. Authy.,* 33 Mass. App. Ct. 701, 703 (1992). That a valuation could be arrived at based upon an income capitalization approach is not here conclusive. "We . . . think it counter-productive, as well as unrealistic, to impose a strict barrier to the reasonable use of 'unconventional' methods — such as the DRC method properly employed — in every case in which plausible, yet not wholly satisfactory, calculations may be made by use of one of the 'conventional' methods." *Correia* v. *New Bedford Redev. Authy., supra* at 366. *Oxford* v. *Oxford Water Co.,* 391 Mass. 581 (1984), upon which the judge expressly relied, further supports his exercise of discretion. There, the court, noting that a public utility is considered a special purpose property in tax assessment cases, stated: "When the property taken by eminent domain is 'special purpose property,' that is, it is not of a

type frequently bought or sold and is used for a special or unusual purpose, the accepted way to determine fair market value is reproduction cost less depreciation." *Id.* at 589 & n.7. See 5 Nichols, Law of Eminent Domain § 20.05[2] (rev. 1991) ("The cost approach is well accepted as applied to valuing public utilities. In fact, [DRC] is considered one of the better methods to determine the utility's fair market value"). We have considered the other arguments made by the defendant relating to the DRC evidence and, to the extent they were preserved for appellate review, find them unpersuasive.

2. *Existence of unregulated buyers.* Not only is there support in the record for the conclusion that the defendant waived any objection to valuations based on the existence of unregulated buyers and conceded the existence of such buyers, but there is also testimony from the plaintiff's experts identifying potential unregulated purchasers both by name and classification, and referring to a trend of purchases of private water companies by public entities. The witnesses also cited the defendant — which itself was authorized by its enabling legislation to purchase the plaintiff and had, in fact, negotiated toward that end — as a potential unregulated buyer. It is not necessary that a buyer actually planning to purchase the property in question specifically be identified. See *Boston Edison Co.* v. *Assessors of Boston*, 402 Mass. 1, 14 (1988). The defendant argues that cases dealing with consideration of potential uses of property taken by eminent domain suggest that a judge must decide that there has been sufficient demonstration that assumptions utilized by expert witnesses are not unduly speculative, before permitting submission to the jury of valuation opinions based on those assumptions. See *Skyline Homes, Inc.* v. *Commonwealth*, 362 Mass. 684, 687 (1972); *Salem County Club, Inc.,* v. *Peabody Redev. Authy.*, 21 Mass. App. Ct. 433, 435 (1986). To the extent that the judge implicitly made a determination that potential unregulated buyers existed, that conclusion found reasonable support in the evidence and did not constitute an abuse of discretion.

3. *Other issues.* (a) The judge allowed the plaintiff's motion in limine to preclude evidence of the price for which water companies in Nantucket and Clovis, New Mexico, had been sold. The motion was supported by submissions indicating significant dissimilarities between those sales and any potential sale of the plaintiff. There was no error. *Alden* v. *Commonwealth*, 351 Mass. 83, 86 (1966) ("The trial judge has wide discretion in determining whether sales offered as comparable will help the jury"). (b) The plaintiff's pre-taking offers to sell to the defendant were made in the context of and under threat of a taking and were properly excluded as offers of compromise, unreflective of true values. See *Enga* v. *Sparks*, 315 Mass. 120, 124 (1943); *Amory* v. *Commonwealth*, 321 Mass. 240, 256 (1947). (c) The instructions to the jury were proper. The judge was not obliged to inform the jury that DRC is a disfavored method. (d) Martin J. Coleman, a real estate appraiser, testified for the plaintiff with respect to

the value of land utilizing what was arguably a similar methodology to that held to be erroneous in *Young Men's Christian Assn. of Quincy* v. *Sandwich Water Dist.*, 16 Mass. App. Ct. 666, 670-673 (1983). However, no objection to this testimony was made nor was there any attempt to strike it, except at an early stage of cross-examination on the ground of nonresponsiveness. When Coleman gave detailed testimony of his income capitalization method on redirect examination, counsel for the defendant, who is not appellate counsel, did not move to strike or to object other than on the ground that the testimony was beyond the scope of redirect examination, a matter well within the judge's discretion. Not having raised squarely the propriety of Coleman's testimony at trial, or in support of its motions for a new trial, the defendant may not argue it on appeal. *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 565 (1976). Since the plaintiff did not rely solely on the valuation utilizing the value of the land ($8,077,777) but also introduced income capitalization evidence in the amount of $8,100,000, we cannot conclude that any inaccuracy in the land valuation likely produced an unjust result. Contrast *Squeri* v. *McCarrick*, 32 Mass. App. Ct. 203, 204 (1992). The judge's remarks during voir dire of a witness for the defendant, that "[m]otions for a new trial go right in the basket," read in context of his discussion of the range of possible verdicts reflect nothing more than a recognition that grounds for a new trial are not demonstrated solely by the fact that a verdict in an eminent domain case falls near, but within, the limits set by the valuation evidence establishing that range. There has been no showing that the judge abused his discretion in denying the defendant's motion for a new trial.

*Judgment affirmed.*

*Erik Lund* (*George A. Berman* with him) for the defendant.
*Thomas F. Holt, Jr.* (*Mark E. Haddad* with him) for the plaintiff.