Agostini, John A., J.
INTRODUCTION
The plaintiff, North Adams Apartments Limited Partnership (NAALP), brought this action against the city of North Adams alleging that it owned easement *91 rights and sewer infrastructure on land owned by the City of North Adams which was taken by eminent domain on December 13, 2005. The plaintiff contested the amount of the pro tanto offer of $10,000.00 for the rights and property taken by the defendant.
The case was called for a jury-waived trial in April 2009, and was completed on April 13. During the course of trial, 7 witnesses testified and 15 exhibits were introduced. Based upon the evidence presented at trial, the Court makes the following findings of fact.[2]
FINDINGS OF FACT
A. Background
The plaintiff is a Massachusetts Limited Partnership with principal place of business in the City of North Adams, Massachusetts. Michael Deep is the managing partner of this enterprise. With respect to this litigation, NAALP is the owner of two parcels of land on West Shaft Road in North Adams. In 1989, the plaintiff was developing an apartment project on West Shaft Road, identified as Tunnel Brook Apartments, and was considering its alternatives with respect to a sewage disposal system. NAALP entered into negotiations with North Adams to determine if the City would be willing to allow the project to use the municipal sewer system. In order to accomplish this goal, the City would have to agree to permit the plaintiff to extend the present sewer lines north on West Shaft Road and to accept its effluence into the municipal sewage disposal system.
After a period of negotiations, the plaintiff and defendant entered into a written contractual relationship entitled Easement and Agreement The Agreement was signed on August 19, 1991, and recorded in the Northern Berkshire Registry of Deeds, in book 832, page 921. In the Agreement the Ciiy granted NAALP an easement on and under a portion of the public way known as West Shaft Road for the purpose of constructing a sanitary sewer system. NAALP was responsible for both the construction and maintenance of the sewer system in accordance with the specifications provided by the City, and would remain the owner of the components of the system. Under this easement, NAALP was permitted to discharge ordinary household waste into the municipal sewer system, subject to the limitations imposed by the permit issued by the Department of Environmental Protection. The Agreement further allowed the City to terminate this agreement at any time and for any reason.
In 1991, NAALP constructed the sewer line extension within the easement in West Shaft Road, including a pumping station, at a cost of $136,540.00.[3] The plaintiff actually extended the line beyond the 35-unit Tunnel Brook Apartments which is located 1,800 feet north of the prior sewer line termination point. The sewer line was extended a total of 3,200 feet (plus or minus) to a parcel of land owned by the plaintiff that was undeveloped but was the future site of a 21-lot single-family residential development to be known as Deep Woods.
On December 6, 2005, the City Council voted unanimously to approve the eminent domain taking of the plaintiffs easement, as well as the sewage transportation system, including all of the equipment, pumping station and pipes that comprise the system. The pro tanto award as set forth in the Order of Taking was $10,000, pursuant to G.L.c. 79, sec. 7B.
On August 23, 2007, the plaintiff filed a complaint in the Berkshire Superior Court, pursuant to G.L.c. 79, sec. 1 et seq., asserting that the pro tanto award was less than the fair market value of the system and seeking additional compensation for the eminent domain taking of the easement and the sewage transportation system. North Adams denied the allegations contending that the sewage system, with its future liabilities, had no value and the $10,000.00 payment was for nuisance value. The parties waived their rights to a jury trial.
B. Valuation
As with all eminent domain cases, this dispute centers on the fair market value of the easement and the physical property comprising the sewage transportation system. The City contends that the property and rights of the plaintiff taken by eminent domain have no value and simply awarded $10,000.00 as a nuisance figure. On the contrary, the plaintiff asserts that the value of easement rights and the infrastructure of the sewage system is between $235,000.00 and $271,370.00. Both parties produced experts in support of their respective positions.
The expert for the plaintiff was Roger P. Durkin, a certified general appraiser. I find that Mr. Durkin is qualified to render opinions of fair market value with respect to easements and related property rights in eminent domain cases. Mr. Durkin testified that there was no market for the sewer line. In other words, there are no buyers of sewer lines that would allow an appraiser to evaluate comparable sales to determine a fair market value. In order to arrive at the fair market value for the plaintiffs loss of the easement and sewer infrastructure, Durkin considered two appraisal methods: (1) Depreciated Reproduction Cost (DRC) and (2) Income Capitalization Approach (ICA). Very simply, the DRC method of valuation is to determine first the reproduction cost of the structure that is being considered and then subtracting the depreciation. The ICA method of valuation seeks to determine the future monetary returns from the ownership of a property, reduced to present value, to identify a fair market value at the time of the taking.
Durkin determined that the DRC method would yield avalué of $271,370.00. He determined this figure by calculating the cost to build an identical system as of December 13, 2005. This entailed retrieving information concerning excavation cost as well as prices *92 for the materials that would be needed to reproduce such a sewage disposal system. In addition to receiving information from contractors, Durkin also utilized the cost data from R.S. Means, a standard construction reference guide for the cost of construction materials. Finally, Durkin determine the life of the components and calculated a depreciation schedule.
The plaintiff supported the testimony of its expert appraiser with the testimony of James Scalise, an excavation contractor. Mr. Scalise provided the court with the estimated costs of reproducing the sewage system as of 2005, the time of the taking. He opined that if the work was done for a private enterprise the cost would be $214,000.00. If the work was done for a municipalily, and subject to prevailing wage laws, the project would cost $256,700.00. I find his testimony to be credible and reasonably consistent with the cost determined by Durkin.
As an alternative, Durkin employed the ICA method of valuation in determine the value of the property taken by the City. In utilizing the ICA method, Durkin determined that there are approximately 22 separate lots that have feasible accessibility to the sewer system on West Shaft Road.[4] Durkin attempted to determine the amount a landowner would pay to connect to the sewer system. In this regard, he noted that one resident in 2006 connected to the sewer system at a cost of approximately $20,000. He eventually concluded that a landowner would pay $20,000 for sewer hookup.[5] This figure was derived at by estimating that the average size of a residence in this market area to be 2-3-bedroom, single-family dwelling. The cost to construct an average Title V private septic system for such a dwelling was determined to be $20,000.00. Consequently, according to Durkin, each homeowner would be willing to pay this amount to connect to the municipal sewer system.
After deducting $4347.00 as the cost in hooking up a homeowner to the system, he concluded that the owner of the sewer system (i.e. NAALP) would receive $15,653.00 profit from each of these 22 lots. He also assumed that all 22 lots would be tied into the sewer system within 5 years of the taking or by 2010, providing a profit of $235,000 from the revenue of allowed entrances to the sewer line.[6] Consequently, he concluded that the fair market value of the loss of the easement and sewer infrastructure to the plaintiff was $235,000.
The expert for the City was James Fisher, a certified general appraiser. He is also well qualified to render opinions of value in eminent domain cases. Fisher has concluded that NAALP suffered no damage as a result of the taking and concurs with the City that the $10,000.00 pro tanto award was simply nuisance value.
Fisher initially noted that NAALP is in the business of developing real estate projects and that the sewer line extension was undertaken to add value to the existing and proposed housing units that it was developing on West Shaft Road.[7] Any investment in extending the septic system would be recouped from the sale of the proposed housing units; building the extension simply for profit from potential users would be an unwise investment. Based upon his experience, education and understanding, Fisher opined that the maintenance/replacement costs of such a system are typically an expense that developers wish to pass on to the municipality by allowing the government entity to take over the system and its potential liabilities. He notes that the plaintiffs two developments continue to have access to the municipal sewer systems increasing their value to NAALP.
It is Fisher’s opinion that developers are not only willing, but hopeful, that a municipality will pick up the ownership of such infrastructure, thereby relieving the developer of such responsibilities.[8] Fisher is unaware of any municipality paying a developer for the right to own and maintain any infrastructure, such as roads, power lines and sanitary disposal systems. Furthermore, Fisher is unaware of any situation in which a property owner paid a developer or a municipality a premium to connect to a sewer in excess of the actual cost of tie-in construction. Accordingly, he concludes that the highest and best use of the property is to convey the property rights to the City of North Adams for one dollar.
DISCUSSION
The general rule for determining damages in eminent domain cases is that “[t]he measure of damages is the fair market value of the property at the time of the taking.” Correia v. New Bedford Redev. Authy., 375 Mass. 360, 361 (1978). See Newton Girl Scout Council, Inc. v. Massachusetts Turnpike Authority, 335 Mass. 189, 193 (1956); Tigar v. Mystic River Bridge Auth., 329 Mass. 514, 517 (1952). “Fair market value is determined on the basis of the highest and best use to which property could reasonably be put.” Douglas Envtl. Assocs., Inc. v. Department of Envtl. Protection, 429 Mass. 71, 75 (1999). “In determining fair market value, the effort is to determine the highest price which a hypothetical willing buyer would pay to a hypothetical willing seller in an assumed free and open market.” Epstein v. Boston Hous. Auth., 317 Mass. 297, 299-300 (1944).
After considering all of the evidence that was introduced during this trial, particularly the expert opinions of the appraisers, I accept and find credible the testimony and opinions of James Fisher and find that the value of the sewer extension with pumping station taken by eminent domain by the City is zero. In fact, I find the system to be a liability that any developer would attempt to shed for no monetary payment to avoid on-going and perpetual maintenance/replacement responsibilities in the future.
In considering the expert opinion of Durkin, I am not convinced that the depreciation reproduction cost *93 method of valuation is appropriate. I find that he has accurately calculated the reproduction costs under this method of valuation; however, this proposed method does not represent the fair market value of the property at the time of the taking because of the on-going liability imposed on the owner.
Initially, it should be noted that this method of valuation is generally confined to certain types of property that had been recognized as often requiring evidence of damages beyond the usual means. It is for property that is, typically, used for special-purposes, or property that was constructed or improved with special features, or located in a particular place. Newton Girl Scout Council, Inc. v. Massachusetts Turnpike Authority, 335 Mass. 189, 194-95 (1956). It is considered the least favored approach to valuation and this disfavored status is grounded in the collective experience of real estate practitioners, commentators, and courts and based on practical concerns. Massachusetts-American Water Co. v. Grafton Water Dist. (No. 1), 39 Mass.App.Ct. 944, 945 (1994). The DRC method does not accurately reflect the fair market value of the system when one incorporates the maintenance/replacement responsibilities.[9]
In this case, the defendant’s expert Fisher has accurately identified that no one would pay any money for what is not only a liability, but a liability in perpetuity. The cost and headaches to maintain the system, particularly a pumping station, would outweigh any potential revenue that would be garnered by charging 15-22 residents an exorbitant tie-in fee. The assessment by Durbin that the neighbors along the road would all pay $20,000 to connect to the system is beyond speculation. From the time the sewer extension was fully operational, 14 years have elapsed and no resident agreed to connect to the system. Since the eminent domain taking only three property owners have connected to the municipal sewer system, however, for a fee of only $2,175.00 — the cost of the connection. To accept the argument that within the next two years all of the remaining residents will take advantage of this opportunity is simply contrary to the historical record. This would be particularly true given the fact that the cost to any future user would be considerably higher than the three recent connectors.[10]
I further accept the testimony of Bruce Collingwood, the Public Works Commissioner for the City of Pitts-field. His testimony that developers routinely attempt to convey to municipalities, streets, electrical lines and sewer systems for no cost in order to eliminate future responsibilities has a commonsense quality to it. In fact, municipalities are now becoming more circumspect in accepting such ‘Trojan horses,” as it is simply taking on financial responsibilities without corresponding benefits. Consequently, municipalities are now being paid for this responsibility.
In conclusion, I am convinced from the evidence that the value of the septic system, including the pumping station, is outweighed by the attendant responsibilities to maintain such a system. Other then a municipality, there is no market for such a system. Cities and towns have historically taken on these responsibilities in light of the services that they are required to provide to its citizens. This behavior has inured to the benefit of the developers but is slowly waning given the increasing cost in maintaining such systems. The City of North Adams has provided NAALP with relief from its perpetual obligations regarding the system that would never be recouped from additional connection revenues. Accordingly, the fair market value of the sanitary septic system is zero.[11]
ORDER
IT IS HEREBY ORDERED:
That judgment enter that the fair market value of the real estate easement and sewer transportation system on West Shaft Road taken by the City of North Adams pursuant to G.L.c. 79, sec. 1 et seq. is zero.

The Court reserves its rights to make additional findings of fact in the Discussion section of this Decision.

The City contends that NAALP constructed the system for $103,000.00 based on correspondence from Deep to the Mayor in 1996 seeking to have the City buy the sewer line, wherein he indicates that he paid that amount to build it. I find that the figure used in Deep’s letter was in error and the actual cost was $136,540, based on the invoices submitted into evidence.

Durkin excluded two lots that were owned by the plaintiff, as well as two additional lots that were located beyond a brook making a sewer tie-in unfeasible. There is, however, a dispute as to the number of lots that would potentially be available to use the sewer system. The defendant claims that there are only 14-16 such opportunities.

The City presently charges $2,175.00 as a hook-up fee.

Durkin used a discounted cash flow financial analysis with a annualized discount rate of 8%.

It is beyond dispute that NAALP would have to either provide its developments with one or more private sewer system (holding tank, leech field, etc.) or connect with a municipal system. There were no figures presented as to the cost to the plaintiff for such a private system(s).

Leo Senecal, the special project coordinator for the City of North Adams, testified that the maintenance for such a septic system would require inspections twice a month by a foreman and semiannual assessments by a professional pump inspector. I accept his testimony as credible on this issue.

he Supreme Judicial court has indicated that “[aflthough cognizant of the view that DRC date does not always affect a meaningful measure of value, we have nevertheless recognized that the trial judge should be allowed to exercise sound discretion in determining when special conditions exist so as to justify the use of such data.” Correia v. New Bedford Redevelopment Authority, 375 Mass. 360, 367 (1978).

The plaintiff pointed to one resident, Giroux, as having paid $20,000 to the city to connect to the sewer line. I do not credit this evidence. I specifically find that cost was shared *94 equally with the City, and represented an extension of the municipal sewer line (250 feet) to accommodate this owner who lived beyond the sewer termination line.

 ^iven the unusual nature of this litigation, it should be noted that the above parties are frequent adversaries in the Berkshire Superior Court. According to court records, there have been 8 separate matters that have been litigated between the parties, including a prior eminent domain proceeding.