EDGAR F. HANSCOM, trustee, *vs.* MALDEN AND MELROSE GAS LIGHT COMPANY.

Middlesex.    November 10, 1919. — January 7, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Trust,* What constitutes, Accounting by trustee.

One, who was heavily indebted to a national bank, conveyed to one of its officers all his real estate in a certain county and executed with the grantee an agreement in writing and under seal that the officer held the real estate "as and for collateral security to secure and protect the" bank "for any and all money which has been -loaned by said bank to" the debtor, for liability on notes discounted by the bank for him, "and further to protect and secure said bank for any future loan or loans" or discounting of notes, and it was provided that the officer should reconvey the real estate or any unsold portion thereof to the debtor "at such time as the above described liabilities to the said bank shall be discharged;" and the grantee was given full power to sell and convey the real estate and to apply the proceeds to payment of the obligations to the bank at his discretion, "he to render the surplus proceeds from the sale of said real estate, if any, to" the debtor "or his heirs, executors or administrators." The instrument contained no provision for supplying a successor for the officer in case of his death. The debtor continued for nearly two years to operate the real estate, when he died. Previous to his death, the bank officer had died. After the death of the debtor another officer of the bank filed the agreement in the Probate Court with a petition under R. L. c. 147, § 5, to be appointed a trustee thereunder and a decree appointing him was made, to which no objection was entered and from which no appeal was taken. The trustee then proceeded to manage the real estate and, by such management and some sales, procured funds with which he paid the indebtedness to the bank and then filed an account which, among other items, asked for certain allowances for services and disbursements of his counsel and for his own services as trustee. It appeared that the trustee had petitioned the Probate Court for instructions, had registered titles in the Land Court, had caused land titles to be examined and had participated in extensive litigation in protection of his title. *Held,* that

(1) The powers, obligations and rights of the first bank officer and of his successor were those of a trustee or *quasi* trustee and not those of a simple mortgagee;

(2) The authority given to the accountant by the decree of the Probate Court was not open to collateral attack;

(3) Under the provisions of R. L. c. 150, § 14, the accountant was entitled to reasonable compensation;

(4) The accountant was entitled to the allowance which he sought for counsel's services and disbursements for him as a trustee.

APPEAL by the Malden and Melrose Gas Light Company, a judgment creditor of the estate of Frank E. Chandler, from a decree of the Probate Court for the county of Middlesex modifying and allowing as modified an account of Edgar F. Hanscom, appointed under the provisions of R. L. c. 147, § 5, to succeed Arthur W. Newell as trustee under a written instrument signed by Chandler and Newell, Newell having died and the instrument making no provision for the supplying of a vacancy in the office of trustee.

It appeared that Chandler, under the circumstances described in the opinion, on August 18, 1911, conveyed to Newell all his real estate in the county of Middlesex, with an exception not material, and that on the same day he and Newell made an agreement in writing and under seal, reciting "That whereas the said Chandler has this day conveyed by warranty deed certain real estate to the said Newell, it is hereby agreed that the said real estate is conveyed to the said Newell and held by him as and for collateral security to secure and protect the Fourth National Bank of Boston for any and all money which has been loaned by said bank to the said Chandler; and also to secure any liability of or loss to the said bank by reason of any notes discounted whereon the said bank is or may be liable for or on account of said Chandler or for any persons at the request of said Chandler, or otherwise; and further to protect and secure said bank for any future loan or loans which said bank may make to said Chandler, and for any future liability or loss which the said bank may incur by reason of any notes which may be discounted in the future by the said bank for or by reason of the said Chandler, or for any person at the request of said Chandler, or otherwise, and in general, to protect the said bank against any liability or loss it may incur through or by reason of any transaction, present or future, entered into with said Chandler or other persons at the request of said Chandler.

"And it is further agreed that the said Newell shall re-convey said real estate or unsold portion thereof to the said Chandler at such time as the above described liabilities to the said bank shall be discharged; but nothing in this agreement shall be construed to affect the right of the said Newell to sell the said real estate conveyed to him and to apply the proceeds thereof to the payment of said loans or to the discharge or satisfaction of any liability as hereinbefore set forth, at the discretion of the said Newell, he to render the surplus proceeds from the sale of said real estate, if any, to the said Chandler or his heirs, executors or administrators, with full power in the said Newell to sell said real estate as aforesaid, without any liability in the purchaser or purchasers for the application of the purchase money in any event.

"The foregoing agreement shall bind the parties hereto, their heirs, executors and administrators."

The items in the account of the trustee which were objected to were the following:

"Item 9. April 24, 1914 Cash paid George R. Blinn   $2,500.00
"     53. June,         Cash paid Adams & Blinn,
                        services and expenses        $2,819.97
"     54.               Cash paid Edgar F. Hanscom
                        services as trustee          $2,000.00"

There was a hearing in the Probate Court before *L. E. Chamberlain*, J. He made, among others, the following rulings:

"The real estate was deeded to Newell as security: he held the property not in his own absolute right, but for the benefit of another; he was put in possession charged with a duty embracing the well defined elements of a trust. . . . No provisions for the payment of the trustee's services were contained in the said instruments. Acting under the appointment of the court and the requirements of his bond, the trustee is entitled under R. L. c. 150, § 14 to his 'reasonable expenses incurred in the execution of his trust' and to 'such compensation for his services as the court in which his accounts are settled may allow.' . . . Items 9, 53, and 54 will be disallowed and allowed as follows:

"Item 9. April 24, Cash paid George R. Blinn         $2,500.00
"     53. June, Services Adams and Blinn             $2,000.00
"     53 (a). Adams and Blinn expenses and money paid  $319.97
"     54. Cash paid Edgar F. Hanscom, trustee         $1,200.00"

In the Supreme Judicial Court, the case was referred to a master. Material findings of the master are described in the opinion. The master's conclusion was that item 9 of the account should be allowed as it stood, $2,500; that item 53 should be divided and allowed as follows: item 53a (services of Adams and Blinn, counsel) $2,500, item 53b, Adams and Blinn, expenses and money paid, $319.27; and that item 54 should be allowed in the sum of $1,200.

The Malden and Melrose Gas Light Company filed objections and exceptions to the report, which are described in the opinion. The exceptions were overruled and the report confirmed by *Crosby*, J., by whose order a final decree was entered modifying the decree of the Probate Court in accordance with the master's conclusions. The Malden and Melrose Gas Light Company appealed both from the interlocutory and from the final decree.

*H. F. Knight*, for the defendant.

*A. L. Taylor*, (*F. J. Johnson* with him,) for the plaintiff.

Rugg, C. J. This case comes before us on appeal from interlocutory and final decrees overruling exceptions to and confirming the master's report and allowing the account of Hanscom as trustee.

The only questions raised on this appeal relate to the items for compensation of the trustee and of his attorneys. The controversy primarily does not concern the amounts of these items, but the propriety of allowing them at all. The decision of that question involves an inquiry into the transactions preceding the accountant's appointment and affecting the nature of his position, duties and relation to the property of which he has had control.

In 1911, Frank E. Chandler, a real estate operator trading in and renting properties of moderate values, was indebted to the Fourth National Bank of Boston, from which he had been a borrower to a greater or less extent for some time. His real estate was under attachment made in 1906 on a suit brought against him by the Malden and Melrose Gas Light Company. Various phases of that litigation are reported in 209 Mass. 354, 211 Mass. 226, and 220 Mass. 1. By deed of August 18, 1911, Chandler executed to Arthur W. Newell, then president of the Fourth National Bank, a deed of all his real estate in Middlesex County (with a single exception), consisting of about ninety parcels, approximately half of which were covered by the attachment, the

others having been acquired subsequently thereto. Contemporaneously with the deed Newell gave to Chandler a paper entitled "Memorandum of Agreement," which was signed and sealed by both. It stated in substance that the conveyance was given to secure the Fourth National Bank against all liability or loss arising from its transactions "present or future, entered into with said Chandler or other persons" at his request. Power on the part of Newell was recognized to sell at discretion any of and all the real estate described in the deed and to apply the proceeds from time to time to the discharge of any liability to the bank therein set forth, and, when all such liabilities should be discharged, to render the surplus proceeds of sales, and to reconvey the unsold portions of the real estate, to Chandler or his heirs, executors or administrators. Chandler's financial condition was such at that time as to give the bank reasonable ground for questioning his standing.

After this conveyance and agreement, Chandler continued to deal with the real estate, collecting rents, making repairs and effecting some sales, Newell executing the necessary papers from time to time and having general supervision of the whole affair. Other lands later were discovered to be owned by Chandler, who conveyed them also to Newell. In April, 1912, Newell was one of the passengers upon the Titanic and was lost at sea with the sinking of that steamship. Chandler continued his real estate business until his death in June, 1913. In the following October the accountant was appointed trustee under the "Memorandum of Agreement," which then first became a matter of public record by being filed in the Probate Court. This appointment was made by the Probate Court upon petition by Hanscom after citation and with the assent of the bank. The decree was entered under R. L. c. 147, § 5, and after reciting in substance that Arthur W. Newell, trustee under the "Memorandum of Agreement," "has deceased before the objects thereof are accomplished, that no adequate provision is made therein for supplying the vacancy, that some of the parties interested have requested the appointment of said petitioner," and other jurisdictional facts, ordered that the "petitioner be appointed as trustee . . . in place of said Arthur W. Newell" under the instrument.

Hanscom was then and during the period here in controversy has remained the assistant cashier of the bank. The case has been re-

ferred to a master, who has found that under his appointment as
trustee the accountant has had general supervision of the renting,
repair and sale of the Chandler properties, and that he has man-
aged and sold certain parcels thereof, through himself or compe-
tent agents, with discretion, ability and sound judgment, and has
out of the proceeds satisfied all obligations of Chandler to the
bank described in the "Memorandum of Agreement." It has
been necessary in the wise management of the property not to
attempt to sell considerable quantities of the real estate at once
but to sell slowly in order not unduly to depress the market.
This has required a period of about three years. There has been
necessity, treating these numerous parcels as a trust entity,
for a considerable amount of litigation of varied character, all of
which has been conducted by the judicious employment of counsel
conceded to have been faithful and competent.

During the accountant's administration of the property, a
petition was brought in the probate court for instructions upon the
point whether proceeds from sales of real estate might be applied
to the settlement of indebtedness upon other parcels the equities of
which were imperiled by the fact that mortgages were overdue
and the mortgagees were pressing for payment. A decree was
entered, from which no appeal appears to have been taken, au-
thorizing the trustee to apply proceeds of sales to the payment of
taxes, interest and in reduction of mortgage and other incumbrances
upon remaining property. The authority conferred by this decree
has been exercised. A considerable amount of work was required
in the searching of real estate titles. Proceedings were had in the
Land Court for the registration of some titles. The trustee also
actively participated in the litigation reported in 220 Mass. 1,
which was deemed necessary in order to determine whether the
attachment of real estate made by the Malden and Melrose Gas
Light Company in 1906 survived the death of Chandler in 1913, or
was dissolved thereby. The decision of that question was mani-
festly of interest to those for whose ultimate benefit the real estate
was held.

All these circumstances require the conclusion that the account-
ant stands in the shoes of a trustee respecting the administration
of the estate in his hands and his right to compensation and reim-
bursement for moneys spent for attorney's fees and expenses. The

original conveyance from Chandler was not to his creditor but to a third person. This circumstance has some significance. *Eaton* v. *Whiting,* 3 Pick. 484, 490. The memorandum of agreement is in the nature of a trust in some of its aspects. The main purpose of the original conveyance and memorandum of agreement was not the payment of a particular debt, but the realization of funds sufficient in amount to wipe out an indebtedness which confessedly was large and was expected to vary in amount from time to time, and which might include the indebtedness of others than Chandler himself. Manifestly the formalities of foreclosure, whenever a sale of real estate should be made, were not within the contemplation of the parties. The purpose of the transaction would have been defeated if that were required. Newell had full power to sell at his own discretion whatever parcel or parcels seemed to him best in the exercise of his judgment. A particular confidence manifestly was reposed in him by the terms of the memorandum of agreement. The sales of parcels of real estate and the application of the proceeds were vested in "the discretion of the said Newell." The instrument did not by its terms make provision for the delegation, transfer or assignment of that special confidence vested in him. The relation of the parties and the nature of the transaction were such that, if both parties lived and the affairs of Chandler prospered or did not grow worse, little or no activity might be required on the part of Newell. If, however, Chandler should become further involved, or should be incapacitated or unable for any reason to continue the efficient management of his affairs, or should die, it is manifest that the duties of the trustee would become active and onerous. Newell then would become charged with important duties, not only to the bank but also to Chandler or his estate, in order to see that the property was well and economically managed and made to yield as large a return to all parties in interest as possible.

It is not necessary to determine whether the relation created by the original conveyance and memorandum of agreement was a pure trust or was in some of its aspects enforceable in equity as a mortgage and Newell a *quasi* trustee. See, in this connection, *Potter* v. *Kimball,* 186 Mass. 120, 122; *Burns* v. *Hunnewell,* 217 Mass. 106, 107; *Shillaber* v. *Robinson,* 97 U. S. 68, 77; *Hoffman, Burneston & Co.* v. *Mackall,* 5 Ohio St. 124, 131; *Rooker* v.

*Fidelity Trust Co.* 185 Ind. 172, 186, 187; *Neikirk* v. *Boulder National Bank,* 53 Col. 350, 353; *Nestell* v. *Hart,* 202 N. Y. 280, 285; *Dryer* v. *Hopper,* 162 App. Div. (N. Y.) 590, 594; Pom. Eq. Jur. § 995. See cases collected in Ann. Cas. 1913 A 1043 to 1056. Doubtless, had the necessity arisen, Chandler could have redeemed in equity. *Clark* v. *Seagraves,* 186 Mass. 430. The relation of the parties, the nature of the property, and the character of the transaction render imperative the inference that the powers and obligations and rights of Newell and his successor, in view of the circumstances which have come into existence, are those of a trustee or *quasi* trustee and not those of a simple mortgagee. It is incompatible with the ends intended to be accomplished by the original arrangement and the kind of properties conveyed to Newell, that his position in the event of necessity for business activity should not be in the nature of that of a trustee.

The accountant was appointed by decree of a court of competent jurisdiction a trustee under the express provisions of a statute. No appeal was taken from that decree. No objection heretofore has been made to his acting in that capacity. His authority cannot be attacked collaterally. *McCooey* v. *New York, New Haven, & Hartford Railroad,* 182 Mass. 205. *Taylor* v. *Badger,* 226 Mass. 258, 262. He has duties in nature those which a trustee should perform. His relation to all the parties was fiduciary in its essential elements. The execution of such duties under the conditions which have arisen was within the purview of the conveyance and memorandum of agreement. The statute expressly provides that a trustee shall have reasonable compensation. R. L. c. 150, § 14. That is a general principle in the administration of trusts. *Parker* v. *Hill,* 185 Mass. 14. Among the proper charges of a trustee, which ought to be allowed in his account, are disbursements rightly made in the employment of agents and attorneys. *Hayward* v. *Ellis,* 13 Pick. 272, 279. *Ensign* v. *Faxon,* 224 Mass. 145, 148.

There is no occasion to go through the items of these charges one by one. They all appear to have been rendered for the ultimate benefit of those concerned in the Chandler estate. The master and the single justice have approved them all. We agree with that conclusion.

The numerous exceptions to the master's report need not be considered in detail. They all were designed to raise in one form or another the question whether the original instruments constitute a trust or a mortgage. The decision, that under the circumstances here disclosed the accountant is entitled to be treated as a trustee in respect of the issues here involved, renders it inevitable that they must all be overruled.

*Interlocutory and final decrees affirmed with costs.*