Rosario L. Lattuca, individually and as trustee,[1] & another[2]
vs. Einar P. Robsham & others.[3]

Middlesex. May 3, 2004. - July 26, 2004.

Present: Marshall, C.J., Greaney, Ireland, Spina, Sosman, & Cordy, JJ.

*Consumer Protection Act,* Trade or commerce, Businessman's claim.
*Fiduciary. Interest. Damages,* Interest, Tort, Attorney's fees. *Trust,* Real
estate trust, Expense of litigation. *Limitations, Statute of. Evidence,* Expert
opinion, Value.

A complaint brought on behalf of a realty trust against an agent of that trust
alleged a private grievance outside the scope of G. L. c. 93A, § 11.
[208-209]
The judge at the trial of a complaint alleging breach of fiduciary duty, an ac-
tion sounding in tort, correctly calculated prejudgment interest under the
statute governing tort actions, at the rate of twelve percent from the time
the action was commenced. [209-210]
The record of the trial of a complaint brought on behalf of a realty trust sup-
ported the judge's exercise of discretion in denying the plaintiff trustee's
motion for attorney's fees. [210-211]
A claim brought on behalf of a realty trust for breach of fiduciary duty was
not barred by the applicable statute of limitations, G. L. c. 260, § 2A, as
the cause of action did not accrue until the beneficiary had actual
knowledge of the fiduciary's breach. [211-215]
The judge at the trial of a complaint brought on behalf of a realty trust did not
abuse his discretion in crediting an expert witness's testimony regarding
valuation of one lot at issue. [215-216]

Civil action commenced in the Superior Court Department on
June 7, 1996.

The case was heard by *John C. Cratsley*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Gary S. Matsko (Thomas S. Fitzpatrick* with him) for the
plaintiffs.

[1]Of the Reservoir Estates Realty Trust.
[2]Grace C. Lattuca.
[3]Joyce L. Robsham; Philip R. Ottaviani, Sr.; and Philip R. Ottaviani, Jr.

*John J. Curtin, Jr. (Alicia L. Downey* with him) for the defendants.

SPINA, J. The Reservoir Estates Realty Trust was a realty trust established to acquire, develop, and sell a residential subdivision in Framingham. Four years after all of the trust's real estate assets were sold, Rosario L. Lattuca, a cotrustee, and his wife, Grace Lattuca, a beneficiary, filed suit, individually and on behalf of the trust, against Einar Robsham,[4] the lender, and Philip Ottaviani, Jr. (Philip Jr.), and Philip Ottaviani, Sr. (Philip Sr.). Philip Jr. was both a trustee and a beneficiary, and Philip Sr. succeeded Philip Jr. as a trustee. The complaint alleged breach of the covenant of good faith and fair dealing, breach of fiduciary duty, and violation of G. L. c. 93A, § 11. After a jury-waived trial, a judge in the Superior Court found that the defendants breached both the covenant of good faith and fair dealing and their fiduciary duties. He found no violation of G. L. c. 93A, § 11, because the dispute was internal to members of the same entity and therefore not "in trade or commerce."[5] The Lattucas appealed, challenging the c. 93A ruling, the calculation of prejudgment interest at the rate applicable to tort actions, and the denial of attorney's fees. The defendants cross appealed, arguing that the action should have been dismissed as time barred, that the judge erred by crediting testimony of the Lattucas' expert real estate appraiser, and that the judge erred in making certain findings of fact. The Appeals Court affirmed the judgment in an unpublished memorandum and order pursuant to its rule 1:28, *Lattuca* v. *Robsham,* 59 Mass. App. Ct. 1105

---

[4]Einar Robsham died after we granted further appellate review but before oral argument. Counsel for Robsham filed a suggestion of death and requested a stay of appellate proceedings, pending the appointment of a personal representative. After we allowed the motion, counsel for Robsham filed a motion to substitute Robsham's wife, Joyce Robsham, as personal representative. The Lattucas assented to this motion. On April 2, 2004, Joyce Robsham filed a motion for partial dismissal of appeal as moot, arguing that the Lattucas' G. L. c. 93A, § 11, claim did not survive Robsham's death.

[5]In their counterclaim, the defendants alleged breach of fiduciary duty by Lattuca but the judge found that the exculpatory clause in the declaration of trust was enforceable, exempting Lattuca from liability arising out of his duties as trustee. The issue is not raised on appeal.

(2003), and we granted the Lattucas' application for further appellate review. We affirm the judgment of the Superior Court.

1. *Facts.* We summarize the facts found by the judge. In 1989, Phillip Ottaviani, Jr., successfully bid on a twelve-lot residential subdivision in Framingham at a foreclosure auction. Five lots had partially constructed houses on them, two others had foundations, and the remaining five were vacant. Robsham, a mortgage lender and Philip Jr.'s friend, agreed to lend Philip Jr., $52,500 for the bid deposit. After Philip Jr. unsuccessfully attempted to obtain additional financing from other sources for the balance of the purchase price, Robsham agreed to be the project lender for eight lots. Robsham recognized that Philip Jr. lacked the experience to manage the project, and because he himself had no interest in undertaking its management, Robsham proposed creation of a real estate trust in which Lattuca, who had the necessary experience, would participate in management of the project.

Robsham and Lattuca previously had engaged in business ventures together, and they socialized and traveled together with their wives. Robsham also had a personal and professional relationship with Philip Jr., to whom he had lent money in the past for business purposes. Robsham proposed that Lattuca would act as cotrustee with Philip Jr., while Joyce Robsham, Grace Lattuca, and Philip Jr. would be beneficiaries, sharing the profits of the subdivision project. The Reservoir Estates Realty Trust was thus declared as a trust on November, 27, 1989.[6] On the same day, Philip Jr. took title to all twelve lots, retained one lot for himself, deeded three to Philip Sr., and deeded the remaining eight to the trust, consistent with his arrangement with Robsham.

---

[6]The parties have referred to the trust as a "nominee trust." A nominee trust, in Massachusetts practice, is a real estate title holding device, with the trustees having only perfunctory duties and acting only at the direction of the beneficiaries. See, e.g., *Roberts* v. *Roberts*, 419 Mass. 685, 687-690 n.2 (1995); *Morrison* v. *Lennett*, 415 Mass. 857, 860 (1993). The extensive powers granted to the trustees in this case, albeit "[s]ubject to the direction of the beneficiaries . . . ," raise a question whether the trust was a true nominee trust under Massachusetts law. For this reason, we do not refer to the trust as a nominee trust.

Lattuca and Philip Jr. began to develop the lots. In April, 1990, after Philip Jr. allowed an order of conditions issued by the Framingham conservation commission to expire, Robsham assumed an active role in the project and began to act as agent for the trust. In pursuing a new order of conditions, Robsham retained an engineering firm, hired contractors to develop the lots, and worked with the conservation commission to obtain approval. After a new order of conditions was granted, Robsham retained Attorney William C. Garrahan to handle the sale of the lots. Lattuca had relinquished all trustee duties, yet retained title as trustee.

In August or September, 1991, Robsham went to Garrahan's office to sign several deeds for the sale of the lots. The deed to lot four was blank when Lattuca signed it. By January, 1992, the landscaping and road work was complete and Robsham had listed lots four and six through twelve for sale with multiple brokers based on prices suggested by the brokers. Lot four received no bids in response to its original listing price of $350,000, or to the reduced listing price of $325,000. Robsham personally purchased lot four for $300,000 that same month, January, 1992, by deed[7] executed by Lattuca and Philip Sr.[8] The judge found that this price, which was set by Robsham, was $106,800 below the lot's market value. Robsham resold lot four in September, 1994, for $419,000. By July, 1992, all of the lots acquired by the trust had been sold.

Four years later, after Lattuca and Robsham had a falling out over an unrelated matter, Lattuca retained counsel to perform a title search of the properties sold by the trust and repeatedly requested that Robsham and Philip Jr. provide him with copies of the trust's financial statements. After discovering that Robsham had purchased lot four and that the trust had suffered a net loss of $300, the Lattucas filed suit.

2. *Chapter 93A claim.* The judge concluded that the Lattucas'

---

[7]There was testimony that the property had been listed for over one year, but this testimony implicitly was rejected by the judge, who found that the sale of lot four to Robsham occurred the same month that it was listed. The defendants did not challenge this finding in their motion to alter or amend the judgment and they do not argue on appeal that the judge's finding is not supported by the evidence or is plainly wrong.

[8]Philip Sr. had replaced Philip Jr. as cotrustee in May, 1993.

chapter 93A claim..failed because it was internal to the trust, and therefore not "in trade or commerce." The Lattucas argue that G. L. c. 93A, § 11, is applicable because Robsham, as the lender, was an "outsider" engaged in commercial transactions with the trust.

Chapter 93A does not apply to internal disputes between parties who associated "in the interests of forming a business venture together." *Szalla* v. *Locke*, 421 Mass. 448, 451-453 (1995) (parties who serve different roles in formation of business are involved in "same venture" so long as they contributed to project). Interaction among parties involved in the same venture are "private" and therefore outside the scope of G. L. c. 93A, which is meant to recognize trade or commerce between separate entities where the public or other business persons or entities may be affected. See *Newton* v. *Moffie*, 13 Mass. App. Ct. 462, 469 (1982). Although Robsham was a lender engaged in commercial transactions with the trust, the Lattucas' complaint was not concerned with those transactions. The Lattucas failed to show how the loans that constituted the commercial transactions harmed the trust, and they made no claim that Robsham acted in an unfair or deceptive manner as a mortgagee in possession. See *McDonald* v. *Rockland Trust Co.*, 59 Mass. App. Ct. 836, 842-843 (2003). Their complaint was with Robsham's administration of the trust, that is, his activities as agent of the trust. In that capacity, Robsham was acting as part of the same venture along with friends and relatives. As such, the complaint against him alleges a private grievance outside the scope of G. L. c. 93A, § 11. See *Steele* v. *Kelley*, 46 Mass. App. Ct. 712, 726 (1999). There was no error.

3. *Prejudgment interest.* The judge awarded damages of $223,264.00 on the claim for breach of fiduciary duty with interest in the sum of $125,224.67. The Lattucas contend that the judge erred in declining to order the calculation of prejudgment interest based on a contract, rather than a tort, theory of liability. An assistant clerk calculated prejudgment interest at the rate of interest for tort actions from the date the complaint was filed. The Lattucas filed a motion to amend judgment, arguing that the "interest on damages . . . should run from the date of the breach." The motion to amend judgement was denied.

The Lattucas argue that, because the judge found a breach of the covenant of good faith and fair dealing as well as a breach of fiduciary duty, prejudgment interest should have been calculated at twelve per cent from the date of breach or demand, as in contract causes of action. See G. L. c. 231, § 6C. Although the judge's findings did reference a breach of the covenant of good faith and fair dealing, they did so only in passing. The judge's actual analysis concerning liability was based entirely on a breach of fiduciary duty, an action that sounds in tort. See *Kirley* v. *Kirley*, 25 Mass. App. Ct. 651, 654 (1988). The prejudgment interest therefore was calculated correctly under the statute governing tort actions, at the rate of twelve per cent from the time the action was commenced. See G. L. c. 231, § 6B. There was no error.

4. *Attorney's fees.* Lattuca argues that the judge erred by denying his claim against the trust for attorney's fees because a trustee is entitled to indemnification for expenses incurred during trust administration. See *Hanscom* v. *Malden & Melrose Gas Light Co.*, 234 Mass. 374, 381 (1920); *Mason* v. *Pomeroy*, 151 Mass. 164, 174 (1890). See also 3A A.W. Scott & W.F. Fratcher, Trusts § 244 (4th ed. 1988) (trustee "is entitled to indemnity for expenses incurred by him for the benefit of the trust estate in defending actions or in prosecuting actions, where the litigation is not the result of his own fault"). Lattuca claims that because there was no finding that he had wilfully breached his fiduciary duties (the standard of liability under the trust) or was negligent in discharging his duties as trustee (the general common-law liability standard) he is entitled to indemnity for attorney's fees. We disagree. The test for awarding attorney's fees includes a determination whether the trustee was at fault, and the decision to award fees is a matter within the sound discretion of the trial judge. See *Milbank* v. *J.C. Littlefield, Inc.*, 310 Mass. 55, 60-61 (1941).

An award of attorney's fees is generally based on the interplay of a number of factors, and is always a highly discretionary matter left to the judge. See *Shear* v. *Gabovitch*, 43 Mass. App. Ct. 650, 690-691 (1997) (judge exercises broad discretion in awarding attorney's fees). After judgment in this case, the Lattucas filed a motion to amend judgment for relief

from judgment and for attorney's fees and attached a written submission accounting for the amount of time spent on the case based on affidavits and exhibits. The judge was entitled to consider, in addition to the affidavits and exhibits accompanying the motion, his knowledge of the trial itself. Cf. *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 629 (1978) (in context of G. L. c. 93A judge may apply "firsthand knowledge" acquired from presiding over case in discerning amount attorney should be paid).

At trial the judge found that after 1990 Lattuca had relinquished virtually all duties associated with the trust even though he continued to serve as trustee. He further found that in 1991 Lattuca signed blank deeds for the lots included in the real estate trust for which he served as trustee. We infer that the judge denied the request for attorney's fees because Lattuca contributed to the financial detriment of the trust.[9] Signing the blank deeds was particularly relevant because the subsequent sale of lot four to Robsham for less than seventy-five per cent of its fair market value was the centerpiece of Lattuca's case, and the judge could have concluded that the trust would not have incurred the losses it did and this litigation would not have been necessary if Lattuca had performed his duties as he should have in the first place. The judge could have found that Lattuca was at fault for the litigation expenses that were subsequently incurred, even in the absence of a finding of wilful breach of the trust. The record supports the judge's exercise of discretion in denying Lattuca's motion for attorney's fees. See *National Academy of Sciences* v. *Cambridge Trust Co.*, 370 Mass. 303, 312 (1976) ("trustee is not entitled to indemnity if the incurring of the expense became necessary because of his own fault").

5. *Statute of limitations.* In their cross appeal, the defendants argue that the claim for breach of fiduciary duty is barred by

---

[9]In other jurisdictions, a trustee "is entitled to indemnity for expenses *not* properly incurred by him if and to the extent to which he has thereby in good faith benefited the trust estate" (emphasis added). 3A A.W. Scott & W.F. Fratcher, Trusts § 245.1, at 338 (4th ed. 1988). Massachusetts appears to follow the minority rule in this area. *Id.* at § 245.1, at 338-339 n.1. Although the lawsuit benefited the trust, it did so only superficially; it served to rectify the financial detriment caused in part by Lattuca. This is, therefore, not an appropriate case for us to reconsider our rule.

the three-year statute of limitations. G. L. c. 260, § 2A. The judge found, among other things,[10] that Robsham breached his fiduciary duty by undervaluing and acquiring lot four for $300,000, a price that was $106,800 less than its market value. The judge also found that Philip Jr. breached his fiduciary duty by failing to repay $11,044 he borrowed from the trust in 1989 that he needed to consummate the closing on the subdivision. The defendants argue that, because Lattuca *could have* conducted a title search to discover that Robsham had purchased lot four in 1992, and because he elected not to pursue the $11,044 reimbursement owed by Philip Jr., he had sufficient "knowledge" in each instance to file suit in a timely fashion, and that each cause of action is now time barred.

The defendants point to the following facts in support of their assertion that Lattuca had "knowledge" of the sale of lot four in 1992 and "knowledge" of Philip Jr.'s failure to repay the trust in 1989. In August or September, 1991, Lattuca went to Garrahan's office to sign several documents that he was told were deeds for the sale of the lots, including the deed to lot four, which did not yet have a buyer. Lattuca made no effort to investigate the sale of lot four until he prepared to file this action in 1996. He admitted that he "chose not to" conduct an inquiry at an earlier time. The defendants contend that Lattuca must be charged with his failure to investigate the sale of lot four earlier, and he must be charged with the requisite knowledge of the facts that triggered the running of the statute of limitations in 1992 when Robsham bought the lot.

Regarding Philip Jr.'s failure to reimburse the trust, Lattuca testified at trial that in 1989 he had been informed by Robsham that Philip Jr.'s check for $11,044 in payment of the debt had been returned for insufficient funds and that he "spoke to"

---

[10]The judge also found that Robsham breached his fiduciary duty by renting the house on lot four for a profit after purchasing it under value, by assigning the interest that Philip Jr. owed to Robsham personally as an expense of the trust, and by claiming $15,300 in points on a loan to the trust. The judge found that Philip Sr. also breached his fiduciary duty as trustee by knowingly receiving $10,000 from the trust without documentation and trustee approval. See *infra* at 216-217. The defendants, however, confine their statute of limitations argument to the Lattucas' knowledge relative to the purchase of lot four and Philip Jr.'s failure to pay the $11,044 debt that was incurred during closing. Our inquiry likewise is so confined.

Philip Jr. about making payment but did not try to collect money from him. Philip Jr. told Lattuca that he did not have enough money to honor the debt. The defendants contend that Lattuca's awareness of the $11,044 debt and failure to pursue collection amounted to knowledge of Philip Jr.'s breach of fiduciary duty in 1989.

Breach of fiduciary duty is a cause of action in tort that is governed by G. L. c. 260, § 2A, which provides for a three-year period of limitation. We have said that when an action is brought against a trustee, the "cause of action does not accrue until the trustee repudiates the trust and the beneficiary has actual knowledge of that repudiation." *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 518 (1997). Therefore, contrary to the defendants' argument that Lattuca "could have" conducted a title search of lot four and "could have" investigated the trust's finances earlier, a cause of action for breach of fiduciary duty does not accrue until the beneficiary has actual knowledge of the fiduciary's breach. Constructive knowledge is insufficient. See *Invest Almaz* v. *Temple-Inland Forest Prods. Corp.*, 243 F.3d 57, 83 (1st Cir. 2001).[11]

We consistently have held that a cause of action for breach of fiduciary duty does not arise until the beneficiary is aware that repudiation has occurred. See *Demoulas* v. *Demoulas Super Mkts., Inc.*, *supra* at 518-519. The judge found that Philip Jr.'s repudiation of trust occurred when he "failed to repay" the trust for his personal closing costs and that "[n]one of the plaintiffs had actual knowledge of any of the defendants' transactions with the [t]rust until 1996." We focus on what the plaintiff beneficiary actually knew, not what the trustee actually or constructively knew. Grace Lattuca was not aware that Philip Jr. had failed to repay his $11,044 debt until Lattuca viewed the "statement of the results of operations of the trust's activities"

---

[11]The defendants suggest that because one of the plaintiffs, Lattuca, was a named cotrustee, he had a duty to investigate the facts that gave rise to this action at an earlier time. Because the other plaintiff in this case, Grace, was a beneficiary who did not oversee trust activities and was likely unaware of any of the facts that gave rise to the breach, we decline to consider whether Lattuca's status as cotrustee required him to investigate the claim earlier than he did. The facts of this case do not prompt us to abandon the "actual knowledge of repudiation" rule.

in 1996. It is undisputed that Philip Jr. had a duty to repay the trust because, as a general matter, trustees may not use trust funds for their personal business. 2A A.W. Scott & W.R. Fratcher, Trusts § 179.1 (4th ed. 1988). The cause of action for breach of fiduciary duty would not accrue until either Philip Jr. brought to the attention of the beneficiaries that he would not pay the loan, or the beneficiaries actually learned of his practical repudiation. See *Demoulas* v. *Demoulas Super Mkts., Inc.*, *supra* at 519, and cases cited.

Even if it could be said that Lattuca made formal "demand" in the contract sense, repudiation does not occur if the trustee "instead of flatly rejecting a demand or request . . . gives some apparently good or plausible reason for his noncompliance, or promises future compliance . . . [which] may well be regarded as being more nearly a recognition of the trust than a repudiation thereof." Annot., 54 A.L.R.2d 13, 25 (1957). See *Prendergast* v. *Sexton*, 282 Mass. 21, 24 (1933) (occasional refusal to honor recognized legal obligation not absolute and unconditional repudiation). Philip Jr.'s statement that he did not have the money to make repayment was not a definitive expression of an intention to repudiate. *Demoulas* v. *Demoulas Super Mkts., Inc.*, *supra*. See *Alton* v. *Rogers*, 127 Cal. App. 2d 667, 679 (1954), cert. denied, 348 U.S. 982 (1955). Lattuca's knowledge of Philip Jr.'s outstanding debt and his understanding of Philip Jr.'s reason for failure to make prompt repayment amounted to nothing more than one trustee's awareness of another trustee's debt, not a beneficiary's actual knowledge of repudiation. See *Prendergast* v. *Sexton*, *supra*. Because Philip Jr. had not expressly repudiated the trust, the cause of action against him for breach of fiduciary duty did not accrue until Grace Lattuca had actual knowledge of his repudiation. See *Akin* v. *Warner*, 318 Mass. 669, 676 (1945). She did not acquire actual knowledge of his repudiation until 1996, after Lattuca viewed the "statement of the results of operations of the trust's activities."[12]

With regard to the claim against Robsham, the record indicates that Grace Lattuca did not have actual knowledge that Robsham purchased lot four until she learned of the results of

---

[12]The defendants do not claim that the statute of limitations began to accrue in 1992 when trust affairs wound up and a financial accounting was produced.

the title search in 1996. On learning the results of the title search, her cause of action against Robsham accrued. The judge did not err by ruling that the plaintiffs' claim for breach of fiduciary duty was not barred by the statute of limitations.

6. *Expert testimony*. The defendants argue that the judge erroneously credited expert testimony offered by the Lattucas to the effect that Robsham purchased lot four from the trust at a price lower than market value. The defendants allege that the expert's admission that she did not use a "comparable sales" approach, see *Correia* v. *New Bedford Redevelopment Auth.*, 375 Mass. 360, 362 (1978), and her "backward extrapolation" method of valuation was impermissible because it "is not recognized as reliable under Massachusetts law" and that the comparable sales of the neighboring lots did not corroborate her valuation.

The witness began her valuation by considering the price at which lot four was sold in 1994 in an arm's-length transaction and adjusted that price by three per cent to account for the inflation that occurred in Framingham between January, 1992, and the fall of 1994 and thereby determined the value of the lot to have been $406,800 in January, 1992. She made no other adjustments after determining that there were no improvements made since 1992 that would have affected the sale price in 1994. She also examined public records to rule out any other explanation for the difference between the price Robsham paid for lot four and the price at which he sold it. Evidence of the market value based on the price accepted by a third party in an arm's-length transaction is a reliable method of valuation. See *Delta Materials Corp.* v. *Bagdon*, 43 Mass. App. Ct. 307, 309 (1997) ("judge could properly have based the market value on the value to a third party in an arm's-length transaction in a free and open market rather than the value to the parties").

The expert supplemented the evidence of the subsequent sale of lot four by considering two other sales of lots within the subdivision, sales which also occurred in 1992. Lot seven sold for $391,000 a few months after Robsham purchased lot four. The judge noted that lot seven is smaller than lot four and that the house on lot seven is twenty per cent smaller than that on lot four. The second comparable sale was that of lot eleven

which sold for over $300,000. The judge also recognized that lot eleven, which held a completed house, was one-third the size of lot four. Evidence of the sale prices of "reasonably comparable property" is the next best evidence to the sale of the property in question. See *Allison* v. *Ticor Title Ins. Co.*, 979 F.2d 1187, 1199 (7th Cir. 1992).

Here, the expert relied on market data in establishing the fair market value of lot four according to a method that considered a subsequent sale and then reasonably adjusted for factors that could have contributed to a price increase. See *Burchell* v. *Commonwealth*, 350 Mass. 488, 489-490 (1996) (lapse of time between transactions does not render evidence incompetent). Her valuation was supported by evidence of two other subdivision lot sales. Notwithstanding the expert's statement that she did not use the "comparable sales" method of valuation, the two other lot sales could reasonably be considered "comparable" to the sale of lot four due to "fundamental similarities" in age, location, and size. See *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 470 (1981). Some flexibility for "backward extrapolation" was warranted where the purchase of lot four by Robsham was not an arm's-length transaction. See *Correia* v. *New Bedford Redevelopment Auth.*, supra at 366-367 (judge has discretion to permit some flexibility in expert testimony on valuation where special conditions exist). The judge was entitled to credit both the expert's valuation and the supporting evidence that lots seven and eleven of the subdivision sold for more than $300,000. See *Anthony's Pier Four, Inc.* v. *HBC Assoc.*, 411 Mass. 451, 483 (1991), and cases cited (valuation is question of fact not to be disturbed unless clearly erroneous). There was no abuse of discretion or error.

7. *Existence of a trust.* There is no merit to the defendants' claim that Robsham cannot be held liable for breach of fiduciary duty because the beneficiaries granted him unfettered authority over the trust, rendering the trust invalid. The judge found that the requisite intent, property, and identifiable beneficiaries existed in 1989 to create the Reservoir Estates Realty Trust, and there was no evidence of trust termination. The judge discredited the testimony suggesting that the trust served as a straw for

Robsham. Because a trust existed and because Robsham acted as an agent on behalf of the trust with the tacit approval of the beneficiaries, he is liable for breach of the fiduciary duty owed by him to the trust. See *Little* v. *Phipps*, 208 Mass. 331, 333 (1911).

8. *Payment to trustee.* The defendants challenge the judge's finding that a $10,000 payment made from the trust to Philip Sr. in 1992 was improper. At trial, the defendants attributed the payment of $10,000 to Philip Sr. to snowplow and lawn watering services rendered. There was, however, no documentation or invoice for this transaction and Lattuca, a cotrustee, never authorized the payment. The judge did not err in concluding that the payment constituted unjust enrichment because it was transferred absent trustee approval and proper accounting.

9. *Survival of G. L. c. 93A claim.* We need not consider whether a claim under G. L. c. 93A, § 11, survives the death of the defendant because we affirm the judge's dismissal of that claim.

*Judgment affirmed.*