Charles E. Todesca filed a complaint asserting numerous claims, including for breach of fiduciary duty and breach of contract, against his cousins and business associates, Albert M. Todesca and Paul A. Todesca. Acting on a motion under Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), a Superior Court judge dismissed the complaint in its entirety, ruling that the breach of fiduciary duty claims were filed outside the applicable statute of limitations and that the breach of contract claim ran afoul of the Statute of Frauds. Having conducted the required de novo review, see Dartmouth v. Greater New Bedford Regional Vocational Technical High Sch. Dist., 461 Mass. 366, 373 (2012), we conclude that the fiduciary duty claims were properly dismissed as untimely, but that the breach of contract claim should not have been dismissed at the pleadings stage. We find no error in the dismissal of the remaining miscellaneous claims at issue on appeal.[3]
Background. The following factual allegations are taken from the complaint[4] and are assumed to be true, with all reasonable inferences drawn in Charles's[5] favor. See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 223 (2011). The claims of breach of fiduciary duty arise from three separate series of transactions. The first concerned Todesca Equipment Co. (TEC), an entity owned equally by the three cousins. Charles claims that Albert and Paul-aided and abetted by defendant Marshall Newman, an attorney who has represented the cousins and their business entities-transferred some of TEC's assets to a new entity, Rochester Bituminous Products, Inc. (RBP), in which Charles did not have an interest. The transfers occurred shortly after Albert and Paul incorporated RBP in June of 1994. Charles was aware of the transfers when they occurred, but Albert and Paul assured him that he would retain his interest in the assets.
The second series of transactions involved Forte Brothers, Inc.,[6] an entity purchased in the early 1990's by Charles, Albert, Paul, and a fourth individual. Charles claims that Albert and Paul, with Newman's assistance, transferred assets of Forte Brothers, including a piece of real estate known as the Ace Junkyard property, to entities owned and controlled by Albert and Paul. Charles was not notified of the transfers but eventually learned of them when one of the entities sold the Ace Junkyard property. When Charles asked whether he would receive a share of the sale proceeds, Albert assured him that he would and that Newman was holding his share in escrow. These series of transactions occurred several years before Forte Brothers filed for chapter 7 bankruptcy protection in 1997.[7]
The third transaction involved a piece of real property called Lanesville Terrace, which was owned by TEC. Charles claims that Albert and Paul, again assisted by Newman, caused TEC to convey Lanesville Terrace to Todesca Realty Trust (TRT), for which Albert and Paul served as trustees. The transfer occurred in July of 2007, but Charles was not notified. At least by 2013, however, Charles was aware of the transfer because he learned that his cousins, on behalf of TRT, were contemplating a sale of the property. By that time Charles had been serving as TEC's sole officer and director for over three years, having taken over those positions in 2010.
It was also in 2013 that the alleged breach of contract occurred. In or about 2003, Charles, at the urging of Albert and Paul, had taken out a home equity loan to fund operations at TEC. In exchange, Albert and Paul promised to make the loan payments, which they proceeded to do for about ten years. In or about 2013, however, they stopped making the payments, causing the lender to commence foreclosure proceedings on Charles's home.
Discussion. 1. Breaches of fiduciary duty. To be timely, Charles's claims for breach of fiduciary duty against Albert and Paul (counts I, IV, and VI), and his claims against Newman for aiding and abetting the breaches (counts II, V, and VII), had to be commenced within three years of the date the causes of action accrued. See G. L. c. 260, § 2A ; Lattuca v. Robsham, 442 Mass. 205, 213 (2004). Typically, a cause of action accrues when the plaintiff is injured. See Koe v. Mercer, 450 Mass. 97, 101 (2007). Here, Charles acknowledges that he was injured by the alleged breaches of fiduciary duty at least eight years, and in some cases more than twenty years, before February 29, 2016, the date he filed his complaint. Nonetheless, he argues that the limitations period must be tolled because Albert and Paul owed him a fiduciary duty and failed to disclose facts sufficient to put him on actual notice of their wrongful conduct. By his calculation, the limitations period began to run in late 2013, when his own investigation uncovered the full extent of his cousins' conduct. We disagree.
It is true that, "[w]here a fiduciary relationship exists, the failure adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent conduct equivalent to fraudulent concealment for purposes of applying" the tolling doctrine codified at G. L. c. 260, § 12.[8] Demoulas v. Demoulas Super Mkts., Inc., 424 Mass. 501, 519 (1997). See Lattuca, 442 Mass. at 213. In such a case, the limitations period starts running when the plaintiff has "actual knowledge" of the facts giving rise to his cause of action. Hays v. Ellrich, 471 Mass. 592, 602 (2015), quoting from Patsos v. First Albany Corp., 433 Mass. 323, 329 n.11 (2001).[9] But this "does not mean that the limitations clock begins only when the plaintiff understands that [he] has a legal claim, that is, when [he] realizes that the defendant has violated a law that entitles [him] to sue to recover damages." Ibid. "Rather, the clock begins when the plaintiff has 'actual knowledge' of the wrong committed by the fiduciary, rather than 'knowledge of the consequences of that [wrong] (i.e., a legal claim against the fiduciary).' " Ibid., quoting from Doe v. Harbor Sch., Inc., 446 Mass. 245, 256-257 (2006).
Here, the allegations of the complaint show that Charles acquired actual knowledge of the first two series of transactions about two decades before initiating this case. Regarding the transfers of TEC's assets to RBP, Charles communicated with Albert and Paul in the mid-1990's about the impact of those transfers on his interests, thus demonstrating his awareness of them. Likewise, as of the mid-1990's, Charles knew about the transfers of Forte Brothers's assets, as he asked about them before Forte Brothers filed for bankruptcy in 1997.
The third transaction concerning the transfer of Lanesville Terrace presents a closer question, but we conclude that the complaint establishes that Charles acquired actual knowledge of that transfer more than three years before initiating this case. Although the complaint suggests that Charles did not learn of the transfer until sometime in 2013,[10] by that time he had been TEC's sole officer and director for several years, with the legal responsibility to look into TEC's finances.[11] And while serving in those capacities in early 2011, Charles was the target of a proceeding by the Massachusetts Department of Revenue (DOR) relating to unpaid tax obligations of TEC; he was represented by counsel in that proceeding and participated in a conference with DOR, which necessarily would have required investigating TEC's finances. Finally, Charles had enough knowledge by 2013 to retain an attorney, who, in the summer of that year, "requested information ... concerning the 2007 transaction by which TEC transferred the [p]roperty to TRT." Considering these allegations together, we conclude that they are sufficient to demonstrate that Charles had knowledge of the transfer before 2013, justifying dismissal under rule 12(b)(6). See Babco Indus., Inc. v. New England Merchants Natl. Bank, 6 Mass. App. Ct. 929, 930 (1978) (affirming dismissal under rule 12(b)(6) where statute of limitations had run and grounds for tolling were "not made out on the facts stated in the complaint").[12]
2. Statute of Frauds. Citing the Statute of Frauds, G. L. c. 259, § 1, the judge dismissed Charles's breach of contract claim (count XIV) because there was no allegation in the complaint that the agreement to pay Charles's home equity loan was made in writing and signed by Albert and Paul. But while it is true that the complaint contains no such allegation, it also does not allege that the agreement was oral. Given its silence on the issue, the complaint should not have been dismissed under rule 12(b)(6) because it does not "show [ ] on its face that the plaintiff's claim is based upon an oral agreement [that] is unenforceable by virtue of the statute." Rozene v. Sverid, 4 Mass. App. Ct. 461, 463-464 (1976). See Quinn v. Quinn, 260 Mass. 494, 497 (1927) ("If th[e] fact [that an agreement is oral when by the Statute of Frauds it must be in writing] does not appear on the face of the pleadings, demurrer does not lie for mere omission to allege that the agreement was in writing"); Romano v. Sacknoff, 4 Mass. App. Ct. 862, 863 (1976) (complaint should not have been dismissed based on Statute of Frauds where "nothing contained in the complaint suggest[ed] that the agreement was oral").
Moreover, even assuming the agreement was oral, it is not apparent, based on the allegations of the complaint, that the Statute of Frauds would apply. The statute requires a writing to memorialize five specific types of promises, contracts, or agreements. See G. L. c. 259, § 1. The judge did not specify which of the five statutory clauses were applicable to this case, but on appeal the defendants offer only one as a potential candidate-the fifth, which covers "agreement[s] that [are] not to be performed within one year from the making thereof."[13] Ibid. This clause only applies, however, to an agreement that cannot, under any conceivable circumstances, be performed within a year. See Bolton v. Van Heusen, 249 Mass. 503, 506 (1924) ; Joseph Martin, Inc. v. McNulty, 300 Mass. 573, 575 (1938). See also Boothby v. Texon, Inc., 414 Mass. 468, 479 (1993), quoting from Doherty v. Doherty Ins. Agency, Inc., 878 F.2d 546, 551 (1st Cir. 1989) ("The Statute of Frauds 'applies only to contracts which by their terms cannot be performed within the year' and 'does not apply to contracts which may be performed within, although they may also extend beyond, that period' "). The complaint alleges that Albert and Paul made payments on Charles's loan for around ten years but does not allege or suggest that they could not have paid off the entire loan within one year. At this stage, therefore, we cannot conclude that the claim is barred by the Statute of Frauds.
3. Miscellaneous claims. Charles also asserted a claim against Newman for breach of fiduciary duty (count IX) for failing to advise him of certain matters once he became TEC's sole officer and director in 2010. The complaint, however, fails to allege a cognizable basis for concluding that Newman owed Charles a fiduciary duty. This claim was thus properly dismissed. The same is true for Charles's claim seeking access to the records of RBP pursuant to G. L. c. 156D, § 16.02 (count XII). The statute grants such access only to "shareholders," G. L. c. 156D, § 16.02, and the complaint expressly alleges that Charles has never been a shareholder of RBP.
Conclusion. So much of the judgment that dismisses count XIV of the complaint is reversed. In all other respects, the judgment is affirmed.
So ordered.
Reversed in part; affirmed in part.

Charles has not appealed from the dismissal of his claims for conversion (counts III and VIII), piercing the corporate veil (count X), declaratory judgment (count XI), or appointment of a receiver (count XIII).

The complaint, as the judge aptly put it, is a "hodgepodge of allegations."

Because Charles, Albert, and Paul share a last name, we use their first names for the sake of clarity.

Later renamed Todesca Forte, Inc., then Todesca Corp.

The judge took judicial notice of the bankruptcy court docket, which shows that Forte Brothers filed for bankruptcy in 1997. Charles does not claim any error in this respect.

"If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." G. L. c. 260, § 12.

Charles disavows reliance on the discovery rule, which tolls the limitations period until "the plaintiff discovers, or reasonably should have discovered, 'that [he] has been harmed or may have been harmed by the defendant's conduct.' " Koe, 450 Mass. at 101, quoting from Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990).

The complaint is less than clear and arguably contradictory in this respect.

We reject Charles's argument that he was "incapable of serving effectively" as TEC's officer and director and therefore the limitations period should be tolled under G. L. c. 260, § 7, because he was "mentally incapacitated." He bases his argument on the allegation in the complaint that "[o]n or about the first quarter of 2007, Charles sustained a work-related injury that resulted in three weeks of hospitalization, and significant long-term damage to Charles'[s] memory and ability to work." This allegation does not provide a plausible basis for tolling under G. L. c. 260, § 7.

Given our ruling, we do not address the defendants' alternative argument, accepted by the judge, that the breach of fiduciary duty claims could only be raised in a shareholder derivative action.

In their motion to dismiss, the defendants also argued for application of the second clause, which requires a writing "[t]o charge a person upon a special promise to answer for the debt, default or misdoings of another." G. L. c. 259, § 1. The defendants do not renew this argument on appeal, however. In any event the second clause only applies to a promise made to a creditor, not to a promise, as here, made to a debtor. See Kearney v. Mechanics Natl. Bank of Worcester, 343 Mass. 699, 701 (1962).